H. H. ANDERSON ET AL., APPELLANTS, v. W. H. KREIDLER ET AL., IMPLEADED WITH BENJAMIN MELQUIST ET AL., APPELLANTS, AND McCOMB & KUBIAS ET AL., APPELLEES.

FILED OCTOBER 5, 1898.   No. 8206.

1. **Mortgages: PRIORITIES: RES JUDICATA.** A finding of the court that the question of priority of liens between two mortgages was not settled in a prior action *held* supported by the evidence.

2. **Res Judicata: ISSUES.** To sustain a plea of prior adjudication the matter in question must be shown to have been of the issues joined and tried in the former action.

3. **Mortgages: ASSIGNMENTS.** A mortgage is but an incident to the debt the payment of which it secures and its ownership follows the transfer or assignment of the latter.

4. ———: ———: **RELEASE BY ASSIGNOR.** The assignor of a promissory note the payment of which is secured by a mortgage cannot as a rule release the promisor from liability for the debt, and, by such release, bind the assignee, or in any manner or to any extent disturb or change the force of the mortgage lien.

5. **Evidence of Agency.** *Held* that the evidence will not sustain a finding that certain parties plaintiffs in a prior suit acted therein, and in some other matters connected with the transactions involved in the present litigation, as agents for the plaintiffs herein.

6. **Lis Pendens.** The conditions of the issues as developed in evidence are such as not to present for discussion and decision the efficiency or force of a notice of *lis pendens* perfected in an action in which it is now contended the question herein litigated was settled.

APPEAL from the district court of Douglas county. Heard below before AMBROSE, J.   *Reversed.*

*F. B. Tiffany, Bartlett, Baldrige & DeBord, J. Q. Burgner, L. D. Holmes, Montgomery & Hall,* and *W. H. DeFrance,* for appellants.

*Duffie & Van Dusen, Bradley & DeLamatre, McClanahan &
Gilmore,* contra.

HARRISON, C. J.

On October 17, 1889, J. Herbert Van Closter executed
and delivered to John L. Miles and James Thompson
three coupon bonds, each in the sum of $5,000, and pay-
able five years after date, and to secure the payment
thereof, executed and delivered to the payees a mortgage
of lot 27 in Rees Place, an addition to the city of Omaha.
The mortgage was filed for record in the proper office of
Douglas county, October 18, 1889. October 28, 1889, one
of the notes or bonds was sold and transferred to the
plaintiff, herein one of the appellants. December 2, 1889,
another of the bonds was sold and transferred to W. C.
Putnam, and by him to Laura A. Raff, Lida B. Raff, and
Mary F. Raff. The other of said bonds was purchased by
Daniel K. Reamey December 8, 1889, and duly transferred
to him, and from him Mary R. Reamey became the owner,
December 25, 1889. Of each note or bond and the ac-
companying interest coupons, Miles & Thompson, by the
indorsement of transference, became the guarantors of
the payment thereof. The assignments of the mortgage
were not recorded; hence, of record, Miles & Thompson
were the apparent owners and holders thereof. Subse-
quent to the execution of the aforesaid notes and mort-
gage, Van Closter made improvements on the mortgaged
property, during the progress of which he incurred a
large indebtedness; and mechanics' liens, amounting in
the aggregate to about $10,000, were filed and perfected
against the property. On August 2, 1890, Van Closter
executed and delivered to H. H. Henderson three prom-
issory notes, in total to the amount of $8,455.75, and a
mortgage on the premises to which we have hereinbe-
fore referred, as security for the payment of the notes.
These notes were sold, indorsed, and delivered to the
Omaha National Bank, appellee herein. It is not dis-

closed of record that there was any assignment of the mortgage to the bank. The mortgaged property was by Van Closter afterward conveyed to William H. Kreidler. Van Closter had instituted an action in the district court of Douglas county in which he sought a recovery of Miles & Thompson of quite a large sum; and on October 28, 1891, a contract was entered into between the parties by which there was accomplished an adjustment or settlement of at least some of their matters of difference, of which agreement the following is an excerpt: "That said Miles & Thompson shall release said Van Closter from all personal liability upon any and all indebtedness contracted with them for loans made by the said Miles & Thompson, or either of them, to said Van Closter, and from all personal liability arising from indorsement of securities discounted or assigned as collateral by said Van Closter with said Miles & Thompson, or either of them, and shall hold the said Van Closter harmless from any personal judgments in favor of said Miles & Thompson or their assignees, arising either out of any loans made by said Miles & Thompson to said Van Closter, or out of any securities transferred by said Van Closter to said Miles & Thompson." After the existence of this agreement Miles & Thompson, who by reason of the failure of the original debtor to pay some of the interest coupons of the bonds first mentioned herein, and in compliance with their contract of guaranty, had paid the amount of such coupons as they became due and were unpaid, commenced an action to foreclose the mortgage for the amount of said coupons. The further references to that action herein will be to "Case No. 303, Docket 37." Such is the designation given it in the brief for one of the parties to the case at bar. In Case 303, Docket 37, there was filed on December 14, 1893, an amended petition in which the cause of action was outlined as we have just, in substance, stated it. The Omaha National Bank came into that suit by intervention on July 14, 1894, pleaded the notes it had acquired from H. H. Henderson, and asked foreclosure

of the mortgage which had been given to secure their payment. The agreement of October 28, 1891, between Miles & Thompson and Van Closter was also pleaded in the answer or cross-petition of the bank, and it was asserted in the litigation that its effect had been to render void the mortgage first executed, or at least the contract had operated its postponment to the lien of the mortgage, the source of the bank's rights. For the bank there was filed and recorded in the proper office, of date February 14, 1894, a notice of *lis pendens*. In April, 1894, there was a decree entered in which the right of priority between the claim of Miles & Thompson and the intervener, the bank, was determined; and on July 14, 1894, a final decree was entered in which the positions of the various liens were fixed. This decree was the subject of allegation in the answers and cross-petitions in the present suit, inclusive of the one filed for the bank; and it is asserted that it established the priority of the lien of the bank over that of the plaintiffs and others whose rights were asserted of derivation from the mortgage first in point of time of execution. In the case at bar there was a trial and resultant decree in which the lien of the bank was given priority to the liens of which the mortgage from Van Closter to Miles & Thompson was the source of existence, and from which adjudication this appeal has been perfected.

The first question presented in argument was in relation to the force and effect on the rights of plaintiffs in this suit of the decrees in Case No. 303, Docket 37. The judge who presided at the trial of that action, and decided the issues, also heard and determined the points of controversy in this one. Of the findings made in the present suit was the following: "The court further finds that as to the allegations, in the answers and cross-petition of the answering defendants herein, that the interest and priority of the lien of the plaintiffs herein, under and by virtue of the mortgage under which they claim, were adjudicated and determined by this court, and by the final

decree entered on the 9th day of July, 1894, in the case of Andrew Miles *et al.* against J. Herbert Van Closter *et al.*, Docket 37, No. 303, of the records of the district court of Douglas county, Nebraska, are not true, for that the evidence fails to show that there was any adjudication of the rights of the plaintiffs herein in said cause and that said decree has no binding force or effect upon the rights of the plaintiffs." This finding has full support in the evidence herein, which, on the subject involved, consists of the pleadings and decrees or portions of the record of the case to which reference is made. The matter now under consideration in the case at bar was not, in that, one of the issues, and was not litigated or determined. The amended petition therein declared upon certain interest coupons as the property of Miles & Thompson, that they had been sold, transferred, and the payment guarantied, and the guarantors, Miles & Thompson, the plaintiffs in the action, forced to pay them to their assignees; and it was asked that, to the extent the mortgage was a security for the payment of such coupons, it be in favor of Miles & Thompson foreclosed. To this pleading the appellants herein, if it be conceded that they were represented in that action by some one who possessed any authority therefor, which from the evidence is more than doubtful, answered and admitted the truth of the allegations and confessed the right of the petitioners to the relief demanded.

The bank, appellee herein, intervened, as we have before stated, and alleged the execution of the agreement of October 28, 1891, between Miles & Thompson and Van Closter, and asserted that its effect was to render the lien of the mortgage under which Miles & Thompson had declared inferior and second to the one under which the bank claimed rights. In the decrees it was adjudicated that the rights of Miles & Thompson, then in litigation, were postponed to those of the bank; but the priorities between the plaintiff and appellants herein and the bank, under the mortgages assigned to and held by them

respectively, were not in question, and not settled. Another point of argument is that the agreement of October 28, 1891, postponed the lien of the mortgage to Miles & Thompson to the lien of the one to Henderson, which, by reason of the ownership of the notes secured by it, was the security of the bank. The contract of October 28, 1891, by its terms, literally taken, provided for releases to be made for future actions; but we will construe it as of present operation of the time of execution, as such was probably the intention to the extent it was to affect Van Closter's personal liability on loans which had been made to him by the other immediate parties to the agreement, the evidences of which were then owned by them. It was general in its terms, referred to all the mentioned transactions between the parties and to none especially or in particular, nor was it shown that any other than a general meaning or application was in contemplation at the time of its execution.

The coupon bond which, as evidence of indebtedness, furnished the groundwork of this action had long prior to the time of the said contract been sold and transferred to the appellants; and the mortgage in suit, as an incident to the notes or debts, had followed their transfer or assignment, and was the security of the assignees in the transactions. (*Cram v. Cotrell*, 48 Neb. 646; *Whipple v. Fowler*, 41 Neb. 675.)

The note or debt is the principal thing and the mortgage a mere incident thereto, and the party to whom the first is transferred becomes thereby the owner of the second. (*Daniels v. Densmore*, 32 Neb. 40.) The mortgagee, after he has assigned the note and debt, cannot release the incident thereto—the mortgage, so as to defeat the rights of the assignee. (*Daniels v. Densmore, supra.*) Neither can he release the debtor from all liability or from liability to a deficiency judgment, so as to bind his assignee of the debt. There is no question here of the rights of a *bona fide* subsequent purchaser of incumbrances, where, as in *Whipple v. Fowler, supra*, and some

subsequent decisions of this court, it has been announced that in favor of such parties a release by the mortgagee, where no assignment of the mortgage appears of record, will be operative and of effect as against an assignee of the secured debt. The bank was the assignee of the debt secured by a mortgage of date and record after the one in suit, and the latter was prior of date, and also of assignment to the contract of October 28, 1891.

The proposition advanced for the bank is that it was entitled to tender and pay the debt secured by the prior mortgage, and be subrogated to the rights of the owners and holders of the evidences thereof, and that the release of the personal liability was an invasion of this right, which operated to diminish or lessen it, and to decrease what would be obtained by reason of such payment, and that equity demands that the lien for the liability which was thus partially destroyed be postponed to the one which, in point of time and record, was its inferior. If the litigation now was between Miles & Thompson, as owners and holders of the debt and mortgage in suit, and the bank in the assertion of its rights as assignee of the Henderson notes and mortgage, the cases cited, namely, *Coyle v. Davis*, 20 Wis. 593, and *Sexton v. Pickett*, 24 Wis. 346, would lend support to the propositions advanced which we have just stated. Whether the doctrine is correct or not we need not and do not decide. In the matter in hand it appears that prior to the time of the contract of October 28, 1891, Miles & Thompson had sold and assigned the debt, and with it the accompanying mortgage, to the plaintiffs and appellants herein, and then had no control over either, or power or authority to release or in any manner deal with either; and it seems clear that the appellants, as assignees of the debts and mortgage, could pursue their rights under either or both and recover as fully and completely as if the contract alluded to had never been in existence; and the bank, if it paid the debt to appellants, and, by subrogation, succeeded to their rights, would have received them thus undiminished and

16

complete; hence the position taken for the bank in this branch of the argument is untenable and cannot prevail.

By some of the expressions employed in the decree in this cause, color is lent to the idea that the trial court had determined that Miles & Thompson had acted in the capacity of agents for the appellants in many portions of the transactions and matters involved herein, and appellants had become bound by such acts, the effects of which were the postponement of the lien of the mortgage in suit to that of the one owned by the bank. A finding that Miles & Thompson were agents for the appellants in any acts which might have the force to work such a postponement, if any was expressed,—which, from the language used in the decree is, to say the least, doubtful,—would have been without support in the evidence; hence this view must be discarded.

As we have before stated, there was filed for the bank at the time of its intervention in Case No. 303, Docket 37, a notice of *lis pendens*, and it is now contended that this operated to bind appellants by the decree in that case, the same as if they had been made parties thereto by service of process. The portion of section 85 of the Code of Civil Procedure, in relation to notice of *lis pendens*, upon which the argument here is based, was declared unconstitutional in the opinion in the case of *Sheasley v. Keens*, 48 Neb. 57, and we are earnestly urged to again examine the question, and some very forcible arguments are produced to induce a belief of the error in that decision, and the constitutionality of the part of the section involved. As we have hereinbefore decided that even if it be conceded that the appellants by the answer filed in their names were parties to Case No. 303, Docket 37, the finding of the trial court in this case that their rights were not adjudicated in that case was correct, and must be approved. The fact that a notice of *lis pendens* was duly filed and recorded is without force, as its utmost effect would be to render a decree in the case in which it was perfected binding as to parties against whom the

notice would operate, the same as if made parties to the
action.    These things being true, the question of the
effectiveness of the notice of *lis pendens* is not presented,
and we may not examine herein whether the portion of
section 85 of the Code of Civil Procedure under which
it was given was constitutional or the reverse.

The judgment of the district court herein appealed
from was erroneous and must be reversed and judgment
entered here of the priority of the lien of the mortgage
foreclosed for appellants over that of the lien of the
mortgage foreclosed for the bank.

JUDGMENT ACCORDINGLY.