SAMUEL THOMISON and JANE THOMISON, his wife, *v.* HILLCREST ATHLETIC ASSOCIATION, a Delaware Corporation.

(*March* 16, 1939.)

RODNEY and SPEAKMAN, J. J., sitting.

*Harold B. Howard* for plaintiffs.

*John S. Walker* for defendant.

Superior Court for New Castle County. Ejectment, No. 124, May Term, 1938.

RODNEY, J., delivering the opinion of the Court:

The defendant claims under a Deed to Guy P. Weather-low from the State Board of Education of Delaware, dated Nov. 17, 1933, which is set out in the statement of facts. That deed expressly grants "all the estate, right, title and interest of the State Board of Education of Delaware, what-soever the same may be, in and to" the land which is the subject of this controversy. No question is raised as to the fact that the State Board of Education succeeded to the interest theretofore vested in School Commissioners of the District, nor to the right of the State Board to convey what-

ever interest had originally been held by the School District. We are therefore immediately remitted to the original acquisition of the property by the School District to determine what quantum of title was then acquired.

It is unnecessary in this case to enter upon any lengthy discussion of the ancient right of Eminent Domain. It is generally conceded that it is an attribute of sovereignty and belongs to the State and to the State alone. It exists independent of constitutional mandate and has existed long prior to any known constitution. It is, however, a dormant right lodged in the sovereign people until legislative action points out the occasions, the modes and the agencies for its exercise. *Lazarus v. Morris*, 212 *Pa.* 128, 61 *A.* 815. The right of individuals in the ownership of property must, of necessity, bend to the requirements of public use and so the right of Eminent Domain had its origin, but no right to take private property for a private use has ever existed. The use must be a public use and the Constitutions, both Federal and State, have added the further limitation that private property may not even be taken for a public use without just compensation. *Const. Del. Art.* 1, § 8; *U.S.C.A. Amend.* 14.

Having in mind that private ownership of property must give way to a definite public need or to a desire to subject that property to a public use, but because the right to own and to retain property is one of the most cherished and sacred rights of a free man so the Courts have rather uniformly considered that Statutes providing the right of Eminent Domain should be strictly construed. While private property is liable to be taken for a public use the owner may refuse to part with the property if intended for a private use and so it is that neither the State itself nor any designated agency may take property as for a public use when in reality it is intended to again convey the property for a private use. The strict construction of Emi-

nent Domain statutes applies both to the amount of property to be taken and to the quantum of the estate or interest, and it is generally held that unless the Statute provides that a fee simple title shall be acquired, or a fee is necessary for the purposes for which the land is taken, that only an easement or qualified fee is taken by the Eminent Domain proceedings. This does not mean that the Legislature may not authorize the condemnation and transfer of the full fee simple title but does mean that, in the absence of such express provision, only that title or only that property is taken which is necessary to be taken for the purposes of the public use or which by plain inference could be construed to have been intended to be taken.

We are in accord with the language of Justice Holmes (when a member of the Massachusetts Court) in *City of Newton v. Perry*, 163 *Mass.* 319, 39 *N.E.* 1032:

"There are no sacramental words which must be used in a statutory power to take and hold lands in order to give a right to take the lands in fee. Any language in the statute which makes its meaning clear is sufficient, and a very little more than 'take and hold' has been held enough."

It remains, however, clear that the Statute must, by some language, show an intent that a fee simple title be taken and we are again remitted to the Statute under which the present question arose.

The Statute provides that freeholders "assess the damages of the owner or owners, taking into consideration all circumstances of convenience or injury, but in making such assessment, they shall allow at least the cash value of the land taken * * *, whereupon, on payment of the damages, so assessed, the said land so taken shall become and be the property of the said school district for the purpose aforesaid."

The defendant contends that the Statute in question both expressly and by implication provided for the con-

demnation of the fee simple title and for the express provision relies upon the following language:

(a) "They shall allow at least the cash value of the land taken."

(b) "On payment of the damages, so assessed, the said land so taken shall become and be the property of the said school district for the purpose aforesaid."

▮▮▮ (a) We are of the opinion that the words of the Statute requiring the free-holders to allow "at least the cash value of the land taken" are not determinative of the quantum of the interest taken. Both constitutional provisions and the general law require that when private property is taken for a public use "just compensation" shall be made. These words are uniformly construed to mean the fair market value based by the measure of a voluntary sale by an owner willing but not obliged to sell and a purchaser willing but not obliged to buy. Fair market value or cash value is the ordinary basis in Eminent Domain proceedings when less than a fee simple title is acquired. 1 *Nichols Eminent Domain*, 2d Ed., p. 658, Sec. 217.

▮▮▮ (b) We now consider the words "The said land so taken shall become and be the property of the said school district for the purpose aforesaid."

If we give the word "aforesaid" the meaning clearly discernible from the Act itself, we find that land to be "the property of the school district for the purpose of the erection of a school house for the use of the District."

Counsel for the defendant have argued that the words "for the purpose aforesaid" have no effect upon the estate acquired but are used merely to show the public use and thus justify the right of Eminent Domain. For this is cited the case of *Hopewell School Dist. v. Bush,* 179 *Ark.* 316, 15 *S. W.* 2d 985. There the Court considered a statute which provided that school districts could exercise the power of Eminent Domain and condemn land for "school purposes." The Court held that the quoted words were not a limitation

upon the estate or interest taken in the lands condemned but upon the right to exercise the power of Eminent Domain. We are in entire accord with that construction, for no general power of condemnation of land does or should exist in a school district, and in a general Act the words "for school purposes" would be a necessary designation of a public use to authorize the exercise of Eminent Domain. The Delaware Statute now considered by us is entirely different. The words "for the purpose aforesaid" are not needed as an expression of the public use and cannot be so construed, for the Statute is solely concerned with the condemnation of private property for school purposes, and deals with no other subject whatever.

While the language of the Arkansas Act does not appear in the *Hopewell* case it is there stated that the Court considered a like provision in *School District of Ogden v. Smith*, 113 *Ark*. 530, 168 *S. W.* 1089, 1091. In the latter case the Statute is quoted and expressly states that upon the condemnation an order will be made "vesting the title in the same for school purposes in said district." The Court also said that the power of condemnation given to School Districts was the same power as given to Railroad Corporations, although it is almost uniformly held that, in the absence of express language authorizing it, Railroad companies do not take a fee simple title by condemnation proceedings. 1 *Nichols Eminent Domain*, 2d *Ed., p.* 599, *Sec.* 192.

In order to show that the words "shall become and be the property of the said school district for the purpose aforesaid" contemplate the transfer of a fee simple interest the defendant has cited the case of *Dingley v. City of Boston*, 100 *Mass.* 544, 554. There the *Statute, St.* 1867, *c.* 308, provided "the title to all land so taken shall vest in the City of Boston." The Court held that the words "the title * * * shall vest" imported the transfer of the fee simple title. We

have no such words in our Act. The words "shall become and be the property of the said school district for the purpose aforesaid" viz. "for the erection of a school house for the use of the district," have nothing in themselves that compel the conclusion that a fee simple title is intended. A very usual definition of "property" is "anything of value which may be acquired and held" and we know of no reason why a thing may not be termed "property" which may be legally acquired and retained by the holder in perpetuity, or so long as may be desirable. A reversioner in an Eminent Domain proceeding has no general power to accelerate his right of reversion and it is a mere dormant right dependent upon the action of that party for whose benefit the property was condemned.

The precise authorities dealing with school sites in condemnation proceedings are very limited in number and the authorities themselves are not entirely consistent. In 10 *R. C. L., Eminent Domain, Sec.* 78, *p.* 89, it is said: "It is well settled that when land is taken for the public use unless a fee is necessary for the purposes for which the land is taken, as for example when land is taken for a school house or the statute expressly provides that the fee shall be taken, the public acquires only an easement."

No authority whatever is cited for the example of a school house in the above quotation, but the statement is repeated in 18 *Am. Jur.* (*Eminent Domain*) *p.* 740, *Sec.* 115, and still no authority is cited. The same work, *Ruling Case Law* in *Vol.* 24 (*Schools*) *Sec.* 31, *p.* 582, says: "As is the usual rule in cases of Eminent Domain, land taken for school purposes does not vest the fee in the district but only the right to use and occupation of the land for school purposes," and no case is cited other than *Lazarus v. Morris,* 29 *Pa. Co. Ct. R.* 505.

The case of *Lazarus v. Morris,* 29 *Pa. Co. Ct. R.* 505, *on appeal* 212 *Pa.* 128, 61 *A.* 815, 816, is a leading case upon

the subject. There the Court construed an *Act of* 1867, *P. L.* 51, providing that upon condemnation of a site for school purposes the School Directors could enter upon the land, not exceeding one acre, "and to use and occupy the same for the purpose of erecting thereon a school house." Both the County Court and the Supreme Court hold that a fee simple title was not taken by the condemnation proceedings and this ruling has been followed until the Act was changed in 1911. The defendant in the present case seeks to distinguish the *Lazarus* case because, in the Statute there construed, the words "to use and occupy the same" were used with reference to the land condemned. This is true but the full expression was "to use and occupy the [lands] for the purpose of erecting thereon a schoolhouse." Our Delaware Act says the land "shall become and be the property of the said school district for [the erection of a school house for the use of the District]." Of course the language of the two Statutes is quite different but we think the difference is not so great as to force a different conclusion.

 Having failed to find any express words in the Statute which indicate that the interest or estate acquired in the condemnation of a school site should be a fee simple interest we shall but briefly consider whether such fee simple interest exists by implication or should be construed to exist from necessity.

It has been plausibly argued that "the uses for which public school lands are acquired are continuous and peculiarly exclusive. The idea of public school lands implies buildings, improvements and transformations, possibly extensive and costly and which in the nature of things must be undisturbed."

No question of continuity or exclusiveness of control can arise for until the cessation of the public use these are clearly covered by the condemnation. The mere fact of improvements or transformations are not unusual on lands

taken by condemnation and cannot in themselves change rules of law except by clear implication. As applicable to the present case the question of improvements has little force. The value of the land when taken by the condemnation proceedings was $50 as shown by the statement of facts. This statement also shows the consideration of the Deed from the State Board of Education to be $55.

The Statute under which the condemnation in the present case was had was passed May 12, 1898, as *Sec.* 17, *ch.* 67, *Vol.* 21, *Laws of Delaware.* The language was, however, entirely copied from an older school law passed March 3, 1857 (*Chapter* 442, *Vol.* 11, *Laws of Delaware*) and both Acts applied solely to rural district schools. At no time has there been any indication of a legislative intent that property taken for school purposes without the consent of the owner should necessarily constitute a fee simple title. If such intention has ever existed it has never been expressed. Even today, when the buildings are far more costly and elaborate than they formerly were, and the amount of land allowed to be condemned has been raised from one-half acre to ten acres, yet there is still no indication that a fee simple title is necessarily acquired. The present law provides, *Sec.* 2717, *Revised Code,* 1935, that upon payment of the condemnation money the "lands may be taken and occupied for the use and purpose for which said lands were condemned."

We see nothing in the Statute which expressly or by implication changes the rule of law to the effect that while private ownership must give way to the public use yet when that public use is voluntarily and finally relinquished the property reverts to him from whom it was adversely taken.

Of course it is plainly evident that we are not considering cases such as *Bentley v. Newark,* 108 *N. J. L.* 317, 158 *A.* 463, 464, or *Carroll v. City of Newark,* 108 *N. J. L.* 323, 158 *A.* 458, 79 *A. L. R.* 509, where property having been condemned for a public use is sought to be put to another

public use. In the present case the use for which the condemnation was had has been entirely abandoned.

The Court being of the opinion that the premises involved in this litigation belong to the plaintiff so, according to the terms of the written agreement, judgment must "be entered that the defendant is guilty of the trespass and ejectment in the plaintiff's declaration mentioned, together with costs of suit."