JESSE M. BURNETT, APPELLANT, V. THE CENTRAL NEBRASKA PUBLIC POWER AND IRRIGATION DISTRICT, A PUBLIC COR- PORATION, APPELLEE.

23 N. W. 2d 661
FILED JUNE 28, 1946. No. 32016.

*Mothersead & Wright* and *G. J. McGinley*, for appellant.
*Beatty & Clarke, R. O. Canaday*, and *P. E. Boslaugh*, for appellee.

Heard before SIMMONS, C. J., PAINE, CARTER, MESSMORE, YEAGER, CHAPPELL, and WENKE, JJ.

WENKE, J.

Jesse M. Burnett, as plaintiff, brought this action in the district court for Keith County against The Central Nebraska Public Power and Irrigation District, a public corporation, as defendant. The purpose and object of the action is to obtain a judgment declaring the rights of the parties in and to the lands involved. The plaintiff prayed he be decreed to be the owner in fee thereof, that the defendant be found to have only an easement over the lands for the purpose of storing water for irrigation and power purposes, that he be declared entitled to use said lands in every way consistent with such easement and which does not interfere therewith, and for a judgment for damages for the use thereof for the years 1941 and 1942.

Other than the prayer for damages, the nature of the plaintiff's action is set forth in the seventh paragraph of

his petition as follows: "That the plaintiff is still the owner of the fee title to the said lands and that the defendant has only a right of way, or easement, over the said land for the purpose of storing water for power and irrigation purposes and that the plaintiff is entitled to every use and profit which can be derived from such land which is consistent with the defendants easement and which does not in any way interfere with the enjoyment of said right of way or easement by the defendant, but that the defendant claims to be the owner in fee of the said lands and claims to be entitled to its possesion for all purposes and refuses to permit the plaintiff to make use of the said land not inconsistent with the defendants easement."

Among the several issues raised by the defendant's answer and cross-petition the fifth paragraph raises the issue that the defendant is the owner of said premises in fee and denies that the plaintiff has any right in or to the same. This paragraph is as follows: "This defendant specifically denies that the plaintiff now has any right, title or interest, either legal or equitable, in and to the real estate described in plaintiff's petition or in and to the use or possession thereof, but alleges that this defendant is now the sole, absolute, fee simple, title owner of said real estate and all of the incidents and rights appurtenant to such ownership."

The trial court found generally for the defendant and against the plaintiff; found that the defendant, by virtue of the condemnation proceedings, acquired an absolute fee simple title to the lands therein taken and to the immediate and exclusive possession thereof; that the plaintiff has no right, title, or interest therein; quieted the defendant's title thereto and dismissed plaintiff's action. From this judgment, after motion for a new trial had been overruled, the plaintiff appeals.

The appellee is a public power and irrigation district organized under Senate File 310, Laws of 1933, ch. 86, p. 337, which is now chapter 70, sections 601 to 679, inclusive, R. S. 1943, and will be referred to as the district.

Under the provisions of section 21 of the Federal Power Act, U. S. C. A., tit. 16, § 814, the district filed its application in the United States District Court for the District of Nebraska, North Platte Division, to acquire lands necessary for its on-river reservoir, which included the lands of the appellant that are in this action involved. This condemnation proceeding was instituted on April 22, 1940. The district in said application set forth that it was necessary to acquire said lands for the construction of its on-river reservoir on the North Platte River and described the reason therefor as follows: "That the real estate above described is required by the applicant as incident to and necessary for the construction of applicant's works of internal improvement, in that applicant as a part of its works of internal improvement is required to construct a dam across the North Platte River at a point to the east of the above described land, which will thereby create an on-river reservoir westward from said dam, thereby requiring applicant to acquire all of the land the subject of these proceedings and that the above described real estate, the subject of these proceedings, is absolutely necessary and essential to the use of the applicant in the construction of its said works of internal improvement and said land will be inundated and flooded by the waters stored in said reservoir and that all of said lands above described will be completely taken and utilized by the applicant in its works of internal improvement."

The prayer of said application included the following: "That your applicant be authorized to enter upon and take such lands for such purposes and that said applicant may be fully vested with full right, title, and interest in and to said lands sought to be condemned herein and have immediate possession thereof, upon payment into this court of the amount of the award made by the appraisers and for such other relief as may be just and equitable."

On May 16, 1940, the appraisers determined the damage for the taking and appropriation of said real estate and

from such award both the district and appellant appealed to the federal district court. On August 2, 1940, the appellant filed his petition in the federal district court, wherein he alleged as follows: "The plaintiffs therefore allege that the fair and reasonable market value of the lands and improvements appropriated for the use of the defendant in the construction of said dam and reservoir is * * * that the property remaining in plaintiffs' possession after said appropriation by the defendant is damaged by reason of the severance and destruction of the property so taken in the amount of * * * that with said lands appropriated, taken out and severed from said ranch, the value of the remaining portion of said ranch, * * * ."

The district's answer filed thereto on August 17, 1940, contains the following: " * * * that said lands so taken, and the whole thereof, are essential and necessary for the construction and operation of the works of internal improvement of the said defendant, and that said defendant now requires all of said lands so condemned and the whole thereof and that the same are absolutely necessary for defendant's uses and purposes of internal improvement."

The following is part of the court's instruction to the jury in determining the value of the land taken: "Now, as to the matter of your allowance. You are to allow the fair, reasonable market value of the land taken, and the damage to the land remaining based upon the fair, reasonable market value of the land before the taking, and after."

In conjunction with the general verdict returned by the jury determining the total damage, four special interrogatories were given the material part of the one pertinent here is as follows: "What does the jury find is the fair reasonable market value of the * * * land taken, * * * which land was taken by the defendant for its purposes of internal improvement, * * * ."

The court entered a judgment upon the verdict returned by the jury. This judgment includes the following: " * * * THAT the plaintiffs, * * * , have and recover ftom the de-

fendant, * * * the sum of $53,326.75 in full and complete satisfaction of any and all damages against said defendant by reason of the defendant's taking and appropriating the lands of the plaintiffs, * * * for the uses and purposes related in the application of the defendant. * * * ."

Appeal was taken therefrom to the Circuit Court of Appeals but the issues here involved were not involved in that appeal. The district paid and the appellant accepted and received the full amount of damages awarded.

It is apparent from these quotations taken from the condemnation proceedings and from a study of the proceedings as a whole that it was the purpose of the district to condemn the fee title to the lands taken, that the parties so understood the nature of the proceedings and no objections were made thereto by the appellant, that the issues were so made and tried, the damage determined on that basis and judgment was entered thereon by the court.

The evidence shows that the reservoir, when full, will hold 2,000,000 acre-feet and that at the time of the trial it contained 720,000 acre-feet. In June of 1942 it held 1,000,000 acre-feet which, up to the time of the trial, had been the most that it had contained. It further shows that 1,400,000 acre-feet will put water on the land here involved. It therefore appears that none of the lands here involved had been flooded at the time of the trial although it all lies within the main reservoir area. There is, however, a small area referred to as free-board which is beyond the water in the reservoir when filled. This area is intended to take care of ice conditions, washing and things of that nature which may occur when the reservoir is full.

The evidence with reference to the use of the lands by the district subsequent to its condemnation thereof shows that in 1941 hay was cut thereon and that commencing with 1942 the district leased this, and other lands in the basin area that were not flooded, for a period from May 1, 1942, to May 1, 1947, to Archie E. Harris. This lease had certain restrictions therein as to the use Harris might make thereof.

and conditions as to the district's rights in regard to the use so made. The appellant leased the lands here involved from Harris and has been in possession thereof ever since 1942.

The lease to Harris states the reason why the district leased the premises and the use to be made thereof as follows:

"Due to fluctuating water conditions on the North Platte River and fluctuating demands for water stored, and to the infrequency of emergency conditions requiring the storage of water above the 3270-foot level, there will be a large area of the reservoir basin which will not be covered with water continuously, and due to the conditions above mentioned, may not be covered with water for periods extending over a period of years.

"Some of the area that may not be covered with water continuously now raises good wild hay and alfalfa hay and some has been farm land. This land can continue to be used profitably as hay land and farm land until such time as it will be covered by water."

Under these facts the appellant contends that only an easement to flood the lands to create a reservoir and the possession thereof for that purpose was obtained by the condemnation proceedings and that subject to such easement the fee title remained in the former owner, the appellant; that as such owner he has the right and is entitled to use the land in such manner as is consistent with the easement and does not interfere therewith.

The district claims, along with other contentions, that it obtained a fee title by reason thereof and that the appellant has no interest in said premises whatsoever.

Therefore, the first question involved in this appeal is whether the district acquired a fee title to the lands condemned or whether it acquired only an easement to flood the same. If it acquired a fee title, as found by the trial court, then all the other issues raised herein become immaterial because appellant admits and the federal district

court determined that at the time of the taking the district was entitled to immediate possession of the premises for the purpose for which they were taken.

Did the court, in the condemnation proceedings, have the power to authorize the condemnor to take a fee and, if so, was it properly determined in that proceeding?

Eminent domain is an attribute of sovereignty, inherent in a sovereign state whether or not reference is made to it in the Constitution of the state. The power exists independently of the Constitution, the provision of the Constitution with reference thereto being a limitation on the exercise of the power and in no sense of the word a grant of the power. The exercise thereof in this state has been limited only insofar as the Constitution requires just compensation shall be paid for all property taken or damaged. May v. City of Kearney, 145 Neb. 475, 17 N. W. 2d 448.

In Forney v. Fremont, E. & M. V. R. R. Co., 23 Neb. 465, 36 N. W. 806, we stated as follows: "Eminent domain is the power to take private property for public use. 1 Bouv. Law Dict., 524. It is the power which remains in the government to resume the possession of property upon making just compensation therefor, whenever the public interest requires it. This right of resumption may be exercised when required for the public good in the construction of a railroad, public road, canal, or other like work. The right of eminent domain, however, does not permit the sovereign power to take the property of one citizen and transfer it to another even for full compensation. Beekman v. Saratoga, etc., R. R. Co., 3 Paige's Ch., 73. In other words, the right of eminent domain gives to the legislature the control of private property for public uses, and for public uses only. 2 Kent's Co., 339, and cases cited. This being the rule, the property must be used for the purpose which justified its taking, otherwise it would be a fraud on the owner and an abuse of power, and the authority being in derogation of private right, is to be strictly construed."

The right to exercise the power of eminent domain rests

in the Legislature. This is stated in McInnis v. Brown County Water Improvement District No. 1, Tex., 41 S. W. 2d 741, as follows: "Eminent domain, or the power to take private property for public use, is an inherent and inalienable attribute of sovereignty. Its delegation to the Legislature is implied from the general grant of legislative power; requires no express authority; and constitutional provisions touching it are generally regarded as limitations upon the legislative authority. See 20 C. J. p. 513, s. 1; 10 R. C. L. p. 11, s. 9; Lewis on Eminent Domain (3d Ed.) vol. 1, pp. 20, 21, ss. 9 and 10."

The Legislature has the right to delegate this power and to restrict or limit the extent of its use. As stated in 18 Am. Jur., Eminent Domain, § 114, p. 740: "The legislature has the plenary power not only to grant or withhold the right to exercise the power of eminent domain, but also to define the quantum of interest or estate which may be acquired, whether an easement or the fee or some estate intermediate these two, such as a base, conditional, or determinable fee. The interest taken depends always on the construction of a statute authorizing the taking. Generally, the rule of construction applied to determine the extent of the grant of the power of eminent domain is that its exercise is limited to the express terms or clear implication of the statute in which the grant is contained. So, if a statute expressly or by necessary implication declares that a fee shall be taken, the condemner will acquire the fee specified. Whether the granting of such an estate is good public policy, there being no constitutional restriction, is a legislative, not a judicial, question. But where the language of the statute will bear that construction, courts, as a general rule, seem disposed to leave the fee in the landowner."

The parties cannot grant to the court any greater power to take the property than the condemnor was authorized by statute to take. This is stated in Brooklyn Park Commissioners v. Armstrong, 45 N. Y. 234, 6 Am. Rep. 70,

as follows: "But, neither by such renunciation, nor without it by proceedings under the statute, could the city obtain a right more extensive than it was authorized by the statute to acquire. The act of the owner, in accepting the awarded compensation, could not be made broader than the provisions of the law to which he thereby assented; nor could the city, by proceedings under it, reach a title greater than it conferred the power of acquiring. From the interpretation of the statute itself, then, must be found the extent of the right of the city in the lands taken."

Thus, where the statute specifically limits the extent of the taking, both the parties and the court are bound thereby and the condemnor can take no greater interest than the statute authorizes. Any taking in excess thereof is without authority and of no force and effect. Likewise, if the statute expressly authorizes the taking of a fee, the condemnor, if he finds it necessary to do so, may take the whole of the freehold since the authorization as to the extent of the taking is a matter of legislative and not judicial concern. See McInnis v. Brown County Water Improvement District No. 1, *supra;* Kingman County Commissioners v. Hufford, 126 Kan. 106, 266 P. 932; Roberts v. Sioux City & P. R. Co., 73 Neb. 8, 102 N. W. 60; The Brooklyn Park Commissioners v. Armstrong, *supra;* Jones v. Oklahoma City, 192 Okl. 470, 137 P. 2d 233; Oakland Club v. South Carolina Public Service Authority, 30 F. Supp. 334.

Under the provisions of sections 70-625, 70-626, and 70-627, R. S. 1943, the Legislature contemplated and authorized districts to purchase, lease, or otherwise acquire such real and personal property as is reasonably necessary for the conduct of its business, to own and hold the same, or, in case it is no longer necessary for that purpose, to sell it. These statutes provide that the district can purchase or otherwise acquire, own, and sell the full interest in either real or personal property.

Under the provisions of sections 70-667 and 70-670, R. S. 1943, which are included within section 7, Laws 1933, ch.

86, p. 349, the Legislature conferred upon such districts all the powers of eminent domain as by statute are applicable to works of internal improvement, electric light and power corporations, irrigation districts, or privately owned irrigation corporations and provided the manner of the exercise of power to be the same as is provided by statute for railroads.

Section 70-667, R. S. 1943, is in part as follows: "All laws applicable to works of internal improvement, and all provisions of law now applicable to electric light and power corporations, or to irrigation districts, or to privately owned irrigation corporations, as regards the exercise of the power of eminent domain, * * * shall be applicable, as nearly as may be, to districts organized under sections 70-601 to 70-679, and in the performance of the duties conferred or imposed upon them under the provisions of said sections."

An examination of the many statutes conferring the power of eminent domain upon the various classes that constitute the four groups referred to in what is now section 70-667, R. S. 1943; namely, works of internal improvement, electric light and power corporations, irrigation districts; and privately owned irrigation corporations, shows a range from an express restriction to an easement to an express authorization of a fee.

If we were to apply some one particular provision or statute as controlling such as the authorization to a railroad, which is a work of internal improvement, the district would be limited to an easement. See Roberts v. Sioux City & P. R. Co., *supra.* Other similar comparisons can be made.

However, from the scope of the legislative authorization, extended to include all four groups above referred to, we can come to only one conclusion and that is that the Legislature did not expressly restrict the district but gave it power to take what was reasonably necessary for the public use for which the taking was authorized, up to and including fee.

For example, section 46-125, R. S. 1943, which relates to

irrigation districts, provides in part as follows: "The board shall have the right to acquire, either by purchase or condemnation, all lands and waters and other property necessary for the construction, use, maintenance, repair, and improvement of any canal, canals, power plants of any kind or nature, and lands for reservoirs for the storage of water and all necessary appurtenances."

In Andrews v. Lillian Irrigation District, 66 Neb. 458, 97 N. W. 336, we said: "The board of directors of an irrigation district, may acquire by purchase or condemnation all lands necessary for the construction, use, maintenance, repair and improvement of its canals."

"There are no sacramental words which must be used in a statutory power to take and hold lands in order to give a right to take lands in fee." City of Newton v. Perry, 163 Mass. 319, 39 N. E. 1032.

The district proceeded in the federal court under and by authority of the provisions of section 21, Federal Power Act, U. S. C. A., tit. 16 § 814. This act is as follows: "When any licensee cannot acquire by contract or pledges an unimproved dam site or the right to use or damage the lands or property of others necessary to the construction, maintenance, or operation of any dam, reservoir, diversion structure, or the works appurtenant or accessory thereto, in conjunction with an improvement which in the judgment of the commission is desirable and justified in the public interest for the purpose of improving or developing a waterway or waterways for the use or benefit of interstate or foreign commerce, it may acquire the same by exercise of the right of eminent domain in the district court of the United States for the district in which such land or other property may be located, or in the State courts. The practice and procedure in any action or proceeding for that purpose in the district court of the United States shall conform as nearly as may be with the practice and procedure in similar action or proceeding in the courts of the State where the property is situated: *Provided,* That United

States district courts shall only have jurisdiction of cases when the amount claimed by the owner of the property to be condemned exceeds $3,000. June 10, 1920, c. 285, s. 21, 41 Stat. 1074."

A careful reading of that act indicates it did not specifically restrict the district in the exercise of the power of eminent domain but gave it a general power to take. This act should be considered in connection with the Nebraska statutes in the manner as stated in Oakland Club v. South Carolina Public Service Authority, *supra*: "Looking at the two statutes together, I construe Section 21 of the Federal Power Act not as an exclusive law of eminent domain, not as abridging substantive rights granted to the defendant under the State law, but as complementary to the State law, and as enabling the holder of a Federal Power license to exercise in the Federal courts, as the defendant is doing, the substantive rights of eminent domain granted to it under the State law." Approved on appeal, Oakland Club v. South Carolina Public Service Authority, 110 F. 2d 84.

Where a statute confers the power of eminent domain but does not specifically provide for the extent of the taking, such as a fee or a lesser interest, then, when the power is sought to be exercised by the taking of the fee or an interest therein, it becomes a question for the courts to determine what part of the freehold is reasonably necessary to satisfy the public purpose for which the power has been granted.

As stated in Thomison v. Hillcrest Athletic Assn., 39 Del. 590, 5 A. 2d 236: "This does not mean that the Legislature may not authorize the condemnation and transfer of the full fee simple title but does mean that, in the absence of such express provision, only that title or only that property is taken which is necessary to be taken for the purposes of the public use or which by plain inference could be construed to have been intended to be taken."

" 'In the absence of any definition of the estate which the grantee of the power is authorized to acquire or any

limitations in the granting statute, no more property can be taken than the public use requires; this rule applies both to the amount of property and the estate or interest in such property to be acquired by the public. * * *.' 18 American Jurisprudence, 741, Section 115." Henry v. Columbus Depot Co., 135 Ohio St. 311, 20 N. E. 2d 921.

"In general the right to take lands and interests in lands is limited by the public need. There are no words in this act expressly conferring the power to take land in fee. It is not an inherent and absolute necessity in all cases that lands to be used for water supply be taken in fee. The quality of the estate to be taken commonly rests with the Legislature, and, in the absence of its definite declaration, only such estate as is necessary to the fulfillment of the public need passes under a taking. Sometimes a fee may be necessary by implication." Flagg v. Concord, 222 Mass. 569, 111 N. E. 369.

In Oakland v. South Carolina Public Service Authority, *supra,* the court said: "It is quite true that the right of the condemnor to condemn is not before the Court on such an appeal; but as to other matters necessarily involved, such as the quantum of the title to be taken, * * * it seems to me that in reason and principle they are under the supervision and control of the Court; and I know of no authority to the contrary."

As stated in Knox v. Louisiana Ry. & Nav. Co., 157 La. 602, 102 So. 685: "Of course, if a servitude is all that the railroad company needs, that alone may be expropriated. Therefore, when a railroad company sues to expropriate a tract of land, if the defendant believes that a servitude upon the land will serve the railroad company's purpose, he may plead that defense, and the burden will then be upon the railroad company to prove that it needs the land in full ownership, and not merely a servitude upon it. * * * We have concluded that the judgment appealed from is correct, and we rest our affirmance of the judgment upon this: That the judgment expropriating the land in full

ownership is conclusive of the issue, which might have been but was not raised by the defendant in his answer to the expropriation suit, as to whether the railroad company had the right to expropriate the land itself, or should have limited its demand to a right of way, or servitude."

In the case of Young v. City of Gurdon, 169 Ark. 399, 275 S. W. 890, wherein the city sought to condemn certain lots for drainage purposes and on appeal from the grant of an easement was given a fee, the court made the following statements:

"It is a sound principle to apply under the doctrine of eminent domain that no more property of a private individual, and no greater interest therein, can be condemned and set apart for public use than is absolutely necessary. Cooley on Constitutional Limitations, 7 Ed. p. 779; Mills on Eminent Domain, p. 110, s. 23.

"Now, the language of our statute, s. 4006, *supra*, 'to enter upon or take,' is broad enough to confer the power to condemn either an easement or the fee as the exigencies of the situation may require."

"An examination of the complaint will show that the appellee was seeking to condemn the fee of the appellants— in other words, to take over the entire property in the lots for the use of the city. That was the issue raised in the condemnation proceeding. The appellee, as we have seen, had the power under the statute to condemn the entire property, that is, the fee therein, if required for drainage purposes."

"Whether or not the appellee needed the whole of the lots in controversy for drainage purposes, and the measure of appellants' compensation for the property taken, were purely questions of fact."

In the majority opinion in Ramsey v. Leeper, 168 Okl. 43, 31 P. 2d 852, the court said: "The court before whom the condemnation proceedings were had, passed on whether or not the exigencies of the demands of the city made necessary the taking of the fee-simple title. * * * We do not hold

that the court entertaining jurisdiction of the condemnation proceedings could not have limited the estate vested in the condemnor to a lesser estate than a fee-simple. The controlling fact is that it did not. If the plaintiffs were dissatisfied with the judgment, they should have complained at the time."

As stated in 18 Am. Jur., Eminent Domain, § 367, p. 1008: "It is a settled principle that the parties and their privies are concluded as to all matters which were put in issue, or might have been put in issue, in the condemnation proceedings." See, also, 29 C. J. S., Eminent Domain, § 328, p. 1368.

The condemnation procedure which the Legislature has provided for railroads, which is applicable here, provides in section 74-314, R. S. 1943, as follows: " * * * The parties shall proceed in all respects in the trial of the cause in the same manner as though the action had been originally instituted in such appellate court."

In United States Nat. Bank v. Loup River Public Power District, 139 Neb. 645, 298 N. W. 529, we said: "In principle, there is no reason why appeals in condemnation matters should not be governed by the same rules which apply to appeals from justice courts."

The appeal transferred the whole cause to the district court where it was pending for trial on its merit. See Beckman v. Lincoln & N. W. R. Co., 85 Neb. 228, 122 N. W. 994.

If, on appeal from the appraisers' award, other matters than the amount of damages are involved such matters must be pleaded. See Republican Valley R. R. Co. v. Hayes, 13 Neb. 489, 14 N. W. 521; Clarke v. Chicago, K. & N. R. R. Co., 23 Neb. 613, 37 N. W. 484. "On appeal to the district court from the appraisement of damages, if other issues than the question of damages are involved, they must be presented by proper pleadings." Trester v. Missouri P. Ry. Co., 33 Neb. 171, 49 N. W. 1110.

In Roberts v. Sioux City & P. R. Co., *supra*, we said: "Whether the amount asked for in a condemnation pro-

ceeding is necessary or not must be determined in such proceeding; and the condemnation of a certain width for a right of way is an adjudication that said width is necessary. * * * If plaintiff believed that defendant did not need a 200-feet right of way through his homestead, he should have raised that issue in the condemnation proceeding."

As stated in State ex rel. Sorensen v. Newman Grove State Bank, 128 Neb. 422, 259 N. W. 170: "In Wheeler v. Brady, 126 Neb. 297, the court held: 'Any right, fact or matter in issue, and directly adjudicated upon, or necessarily involved in, the determination of an action before a competent court in which a judgment or decree is rendered upon the merits is conclusively settled by the judgment therein and cannot again be litigated between the parties and privies whether the claim or demand, purpose, or subject-matter of the two suits is the same or not.' See, also, School District D v. School District No. 80, 112 Neb. 867; Slater v. Skirving, 51 Neb. 108; Orcutt v. McGinley, 96 Neb. 619; Hanson v. Hanson, 64 Neb. 506; Lowe v. Prospect Hill Cemetery Ass'n, 75 Neb. 85; State v. Broatch, 68 Neb. 687."

"The judgment of the district court on appeal from an award in a condemnation proceeding for right of way is conclusive upon the parties thereto as to all matters actually litigated therein, and also as to all matters necessarily within the issues joined, although not formally litigated." Atchison & N. R. Co. v. Forney, 35 Neb. 607, 53 N. W. 585. See, also, Atchison & N. R. Co. v. Boerner, 34 Neb. 240, 51 N. W. 842; Dillon v. Chicago, K. & N. R. Co., 58 Neb. 472, 78 N. W. 927.

We therefore come to the conclusion that the district was granted the power of eminent domain by the Legislature with no specific restrictions as to the extent of its right to take. The Legislature thereby delegated to the district the right to exercise such power to whatever extent was reasonably necessary to carry out the purpose for which the power was delegated. When the district brought the con-

demnation proceeding and thereby exercised the power and designated the extent of the interest in the freehold that it required, then, on appeal to the district court, the question of the reasonable necessity of the extent of the taking for the use intended was in issue and if objected to by the owner could and should have been raised therein. The appellant having failed to do so in that proceeding cannot raise the question here.

We recognize that the court could have found: That a lesser interest was all that was necessary for the use for which it was taken as in Warm Springs Irrigation District v. Pacific Live Stock Co., 270 F. 560. Or, " 'Where the interest to be taken is not expressly stated, the condemnor is presumed to take no greater interest than an easement where an easement is sufficient to satisfy the purposes of the taking.' 20 C. J. 1223." Cheves v. Whitehead, 1 F. Supp. 321. Or, that a taking for a certain purpose, such as a street or road, does not necessitate the taking of the fee. Tacoma Safety Deposit Co. v. Chicago, 247 Ill. 192, 93 N. E. 153, 31 L. R. A. N. S. 868. See, also, Proprieters of Locks & Canals v. Nashua & Lowell R. R. Co., 104 Mass. 1, 6 Am. R. 181. However, these cases are not applicable here for the district did ask for a fee for the purpose of inundating the land, the owner made no objection thereto, and the court granted the district's request.

Let us for a moment consider further the effect of the appellant's contention that the district could not acquire a fee title in the land by exercising the power of eminent domain through condemnation proceedings under the statutes granting the district that power. The far-reaching effect of such a view, if adopted, can only be estimated when we consider the extent of property that has heretofore been acquired through condemnation by agencies or subdivisions of our state government within the four classes referred to in section 70-667, R. S. 1943.

When land is condemned for the purpose of providing a water supply, such as in the construction of a reservoir in

the instant case, such condemnation is made in contemplation of a continued future use. Districts in the exercise of their right of eminent domain for that purpose should pay all damages caused by reason of the taking of the land condemned for that purpose. This the district did in the condemnation action. Therein the owner's damage must be assessed at the time of the taking for all injuries sustained thereby. The amount thereof could not be properly ascertained without a determination as to the extent of the taking. The Legislature having made no specific restriction in the extent of the taking and the district having made application to take a fee, the power to grant a fee rested in the court. If the owner objected thereto he should have presented that issue on appeal, where it could have been raised. Of course, all of this would have no application where the Legislature specifically limits the extent of the taking or where the Legislature, in the proceedings provided for condemnation, limits the matters that can be heard so that on appeal the question could not be raised, for every person is entitled to have his day in court.

If only the question of possession were involved there is another reason why we think the appellant must fail. The original condemnation action was brought to acquire these lands for the purpose of inundating them as part of the district's reservoir. The evidence shows they lie within the main reservoir basin of the project which consists of about 35,000 acres and will be flooded when 1,400,000 acre-feet are stored therein. The reservoir, when full, will hold about 2,000,000 acre-feet.

Subsequent to acquiring these lands the district expended large sums of money and built extensive improvements to carry out and is carrying out the purpose for which it was created and for which these lands were taken. Up to the time of trial no waters had covered the lands herein involved. However, in acquiring the lands in the basin certain things were necessary in connection with the use thereof in order to protect the improvements of the dis-

trict and the welfare of the public, especially in the valley immediately below the dam. Such things as buildings, fences, livestock, etc., had to be removed therefrom and the lands cleared and subsequently used in such a manner that in time of floods such things as hereinbefore described would not come down with the water and interfere with the control towers and thereby endanger the dam of the district.

This is set out in the lease with Harris and a part thereof is as follows:

"It is essential that, in the safe operation of the reservoir, no permanent improvements (including fences) be placed in the reservoir area on any land that may hereafter be covered with water, and that all cattle, machinery, and equipment, which, if caught in a flood, might be washed into and obstruct the use of the outlet works, be kept at a point sufficiently above the water level existing just prior to the flood so that they either will not be reached by a flood or ample opportunity will be given for their safe removal. * * *

"In event of a threatened flood, which in the opinion of the Chief Engineer and General Manager will cover any of the land on which cattle, hay stacks or stored crops are located, the Lessee shall immediately remove as much of his property as possible. In case a flood is threatened, the District reserves the right to burn or otherwise destroy any of said property that, in the opinion of the Chief Engineer and General Manager, the Lessee may not be able to remove before the flood reaches it and which will be caught in such flood. The District shall not be liable for any property so destroyed. * * *

"This lease is also made upon further condition that the representatives of the District may go upon any portion of the premises at any time, bore holes thereon, make excavations, and do anything that, in the opinion of the Chief Engineer and General Manager of the District, may be necessary in the operation, management or maintenance of said reservoir. The District may also fill said reser-

voir with water at any time, to any capacity it desires and has water available therefor. The Lessee's rights under this lease are at all times subject to the right of the District to operate and maintain water in said reservoir to its maximum capacity. The District shall not be liable for damages for the flooding of any land or the destruction of any crops or for any other damage resulting from the doing of any of the things it retains the right to do under the terms of this lease."

In this large reservoir basin immediate and complete control is important to the district for the safety of its improvements and likewise of the public. It was proper and necessary in the first instance for the district to obtain exclusive control of the lands within the basin for the purpose of clearing them and to control their use. This control the district properly and necessarily retained under its contractual relations with Harris.

It is true that parts thereof will not be flooded at all times although the extent thereof will depend largely upon the amount of water flowing in the river, the extent of storage, and the use thereof. Nevertheless, we think the district should have complete and immediate control thereof while it is carrying out the purpose for which the lands were taken. To permit the many former owners to come in and take possession would seriously impair this control and interfere with the purpose for which the lands were taken and for which the former owners have been paid.

We think the language used in the case of Barnes v. Peck, 283 Mass. 618, 187 N. E. 176, is applicable here: "The taking of lands for purposes of a water supply is incompatible with the idea of divided control over that land. The necessities of the public welfare import exclusion of all others from use of the land and of that which grows thereon unless rights of that nature are excluded from the scope of the taking." And as stated in City of Newton v. Perry, 39 N. E. 1032 (163 Mass. 319): "Where land was taken and paid for by a city for the protection of its water

supply, exclusive possession of the surface was one of the rights acquired."

For the reasons stated we think the decree of the lower court should be and is affirmed.

AFFIRMED.

CARTER, J., *dissenting*.

I am not in accord with that part of the majority opinion which holds in effect that the extent of the taking for the use intended and the quality of the title acquired is finally adjudicated in the condemnation proceeding. Such a holding broadens the whole principle of eminent domain and imposes upon the landowner the duty to guess upon the future intentions and acts of the condemnor and, if he guesses wrong, to be forever bound thereby.

The power of eminent domain is a power inherent in the sovereignty of the state limited only by constitutional provision. The right to take private property for a public use does not grow out of the condemnation proceeding, or any order or judgment entered therein. The right to so take is finally established only when the property has actually been put to a public use. If the rule be otherwise, a condemnor could proceed to condemn for a public use with the best of motives and, because of contingencies unforseen at the time of the condemnation proceeding, could abandon the public use affording the basis of the condemnation without even jeopardizing, under the holding of the majority, the extent of the taking and the quality of the title alleged in the condemnation petition to have been necessary. Under such circumstances the holding of the majority permits a taking of private property for a private use, an act not permitted under any theory of eminent domain and expressly prohibited by the Constitution of the United States and of the several states. I submit that the extent of the taking and the quality of the title taken is dependent, not upon any order or judgment entered in the condemnation proceeding, but upon the nature and extent

of the public use to which it was actually put, a question of fact entirely foreign to a fixing of the damages in a condemnation suit.

The judgment entered in the condemnation proceeding in the District Court of the United States for the District of Nebraska in the suit to condemn the lands involved in the present action awards a judgment for damages "in full and complete satisfaction of any and all damages against said defendant by reason of the defendant's taking and appropriating the lands of the plaintiffs, as aforesaid, for the uses and purposes related in the application of the defendant District in these proceedings, * * *." There is nothing in the verdict rendered by the jury or the judgment entered thereon that does anything more than to make an award of damages. Nowhere does it appear that any attempt was made by the court or jury to determine the extent or quality of the title taken by the defendant. In addition to this, it appears in the order entered after pretrial hearing that "The only issue in this case, as agreed between the parties, is the question of damages for reason of the condemnation proceedings." I submit that there is no basis whatever for the holding of the majority that the extent and quality of the title was finally determined in the condemnation proceeding under the record in that case. How it can be said that this issue was finally determined in the face of a stipulation that it was not an issue and where the verdict and judgment make no mention thereof, is beyond the comprehension of the writer. It is also interesting to note that there is in evidence a contract between the parties to this suit by which the plaintiff repurchased the buildings and improvements on the land condemned, which contains the following recital: "WHEREAS, the question of the nature of the title was not adjudicated in the United States District Court, granting first party possession of said premises and it is agreed that the entering into of this agreement shall be without prejudice or estoppel to either party with reference to the

nature of the title to said premises, * * * ." It is evident from this statement that the majority opinion assumes with reference to the condemnation proceeding a position which both parties admit did not exist.

A plea of res adjudicata cannot be sustained where the issue involved was not adjudicated pursuant to a stipulation of the parties. In Anderson v. Kreidler, 56 Neb. 171, 76 N. W. 581, we said: "To sustain a plea of prior adjudication the matter in question must be shown to have been of the issues joined and tried in the former action." How can the nature of the title taken be "of the issues joined and tried" when the parties solemnly agreed in open court that the only issue was the question of damages? For the majority to say in effect that the quality and extent of the title taken was finally adjudicated under the situation revealed by this record, is to extend the principle of prior adjudication far beyond the limits of any cases we have been able to find on the subject.

It is well settled that condemnation for a nonpublic use is a denial of due process of law under the Federal Constitution. Fallbrook Irrigation District v. Bradley, 164 U. S. 112, 17 S. Ct. 56. It is also well settled that whether the use is public or private is a judicial question. Hairston v. Danville & Western Ry. Co., 208 U. S. 598, 28 S. Ct. 331. The following statement of the law appears in New Orleans P. Ry. Co. v. Gay, 32 La. Ann. 471: "There is no doubt that the title in fee of the property of a citizen may be taken, if necessary for purposes of public utility, adequate compensation therefor being made. But the only basis, for this right of expropriation, is the needs of the public. The property of no man can be taken without his consent, beyond what is demanded by the public necessity. This results, we think, from the provisions of the Federal and State Constitutions, which declare in substance that vested rights cannot be divested by the State, nor private property be taken, except for purposes of public utility. To entitle the public to take private property, two

things are necessary; first, the interest of the public must require it, and second, adequate compensation must be made.

"We think it a fair deduction and corollary of these propositions, that the public can take no more, either in quantity or estate, than will suffice the public wants. If necessary, the fee may undoubtedly be taken; but if not necessary, it cannot. If a servitude or right of way will answer all the purposes of the plaintiff, to take more would be to violate the letter and spirit of the constitution. As we said in the case in 31 A. referred to, the question, as to the extent or nature of the estate which the public needs require to be taken, is one of fact."

It is noteworthy that in Smith Canal or Ditch Co. v. Colorado Ice and Storage Co., 34 Colo. 485, 82 P. 940, the court refused to recognize that condemnor obtained a fee title, although the applicable statute authorized it on the theory that an easement was all that was required and that the statute contemplated that he was entitled to nothing more. In Kellogg v. Malin, 50 Mo. 496, it was held that nothing more than an easement was acquired by the condemnation, even though the statute authorized the taking of a fee simple title. These cases bear out the fundamental concept of eminent domain—the taking of private property in the exercise of the right of eminent domain must be limited to the reasonable necessities of the case so far as the owners of the property taken are concerned. Newton v. Newton, 188 Mass. 226, 74 N. E. 346. The Legislature clearly has the power to effectuate the right to take for a public purpose by condemnation proceedings, but it lacks the power to authorize the taking of more than the sovereign power of eminent domain itself authorizes. If it had and exercised such power, it would amount to a taking of private property for a private use insofar as the excess is concerned.

It is clear in the present case that the statute authorizing the condemnation does not expressly state the interest

to be taken. Under such circumstances, the condemnor is presumed to take no greater interest than an easement, where an easement is sufficient to satisfy the purposes of the taking. Michigan C. R. Co. v. Garfield Petroleum Corp., 292 Mich. 373, 290 N. W. 833; Harris v. Elliott, 10 Peters 25, 35 U. S. 25; Newton v. Manufacturers' Ry. Co., 6 Cir., 53 C. C. A. 599, 115 F. 781. The general rule is stated in an authoritative text as follows: "In the absence of any definition of the estate which the grantee of the power is authorized to acquire or any limitations in the granting statute, no more property can be taken than the public use requires; this rule applies both to the amount of property and the estate or interest in such property to be acquired by the public. Furthermore, it is universally recognized that a grant of the power of eminent domain will not be extended by implication, and that when an easement will satisfy the purpose of the grant, the power to condemn the fee will not be included in the grant unless it is so expressly provided. Accordingly, it is well settled that when land is taken for the public use, unless the fee is necessary for the purposes for which the land is taken—as, for example, when land is taken for a schoolhouse or the statute expressly provides that the fee shall be taken— the public acquires only an easement. The public easement, or servitude as it is sometimes called, in such a case extends to all uses directly or incidentally conducive to the advancement of the purpose for which the land was acquired, and to no others; and the owner retains the title to the land in fee and the right to make any use of it that does not interfere with the full and free exercise of the public easement." 18 Am. Jur., Eminent Domain, § 115, p. 741.

Consequently, assuming the correctness of my position that res adjudicata is not a defense in the present action, we must look to our own decisions to determine the extent and quality of the title taken in a condemnation proceeding for the flooding of private lands. The rule has been gen-

erally stated in this state to the effect that a petitioner in a condemnation proceeding to secure the right to overflow private lands does not, by a judgment in his favor and the payment of the damages assessed, acquire the right in perpetuity to flow such lands, but secures a privilege (easement) which may be lost by abandonment or nonuse for an unreasonable length of time. Gross v. Jones, 85 Neb. 77, 122 N. W. 681. See, also, Lucas v. Ashland Light, Mill & Power Co., 92 Neb. 550, 138 N. W. 761.

The foregoing not only appears to be the rule in this state, but it appears to be the general rule in other jurisdictions. In Warm Springs Irrigation District v. Pacific Live Stock Co., 270 F. 560, it was said in a case involving a statute similar to the one before us: "This is not to say that a fee-simple title to land may in no instance be taken by irrigation districts in condemnation proceedings under the Oregon laws, nor to say that for a dam site it may not become necessary to condemn the title to land. But for a reservoir site there can be no question that the demands of necessity are met by the condemnation of an easement. * * * The ultimate question when all is said, is: What interest in land did the Legislature intend should be taken for a reservoir site? The answer, in the absence of a clearly expressed intention to the contrary, is that the intention was that there should be taken no greater interest than that which might be necessary for the purpose intended. Here there is no clearly expressed intention to the contrary."

In Board of County Commissioners v. Hufford, 126 Kan. 106, 266 P. 932, the county condemned a 12-acre tract for a gravel pit. The court held: "Our condemnation statutes do not authorize the taking of the fee. The title to the twelve acres did not pass by the condemnation proceedings under R. S. 68-137, nor was a transfer of ownership effected thereby." If the taking of land for a gravel pit does not require the taking of the fee, how can it be said that a flooding of lands would require it?

It seems to me that the majority opinion is in gross error in holding that it was shown by the condemnation proceedings that the district intended to and did condemn a fee title because (1) it was specifically stipulated that the nature of the title was not involved; (2) that under no circumstances, in the absence of statutory authority, could the condemnor take more than was reasonably necessary to accomplish the public purpose for which it was taken; (3) that under our holdings an easement is all that is required in the flooding of lands for reservoir purposes; (4) that the condemnation proceeding is not a prior adjudication of the nature and extent of the title taken, that question being determinable only from the use to which it is actually put, even in the absence of an exclusionary stipulation; and (5) that the only issues that can properly be litigated in a condemnation proceeding are the existence of a public purpose and the damages resulting from the use of the property in the carrying out of that public purpose.

SIMMONS, C. J., and YEAGER, J., concur in dissent.