FIRST PRESBYTERIAN CHURCH OF WILMINGTON, DELAWARE, INCORPORATED,

*vs.*

ARTHUR L. BAILEY.

*New Castle, May 8, 1916.*

Conditions subsequent are not favored in law, and all doubts are resolved against them.

Where land was conveyed for a recited cash consideration to named persons and their successors, the trustees, overseers, and elders of a church, for a meeting house, burying ground, and such other pious uses as the grantees and their successors, by the congregation thereafter to be chosen, should deem most fit, no condition subsequent was attached in case the church subsequently conveyed the property; there being no provision that in case the property should not be used for the uses mentioned it should revert.

BILL FOR SPECIFIC PERFORMANCE.   The bill in this case is one to enforce specific performance of a written contract for the sale by the complainant to the defendant of a tract of land situate in the City of Wilmington, with a front of ninety feet on Market street and King street and about two hundred and ten feet on the south side of Tenth street, together with an easement of light and air over a strip of land on the south fifteen feet wide, the consideration being two hundred and twenty-five thousand dollars, five hundred dollars of which was paid at the time the contract of sale was made.   By the agreement the vendor undertook to convey a fee simple title.

From the bill it appears that Timothy Stidham by indenture dated the thirtieth day of December, 1737, conveyed the land in question to James Chalmers, and others, "and their successors, the trustees, overseers and elders and all others the congregation and members of the Presbyterian Church and their 'successors forever," in consideration of three pounds in money, "and as well for and in consideration and to the intent

that all and singular the lot of land hereafter in these presents described, bargained and sold or mentioned so to be, with the appurtenances, may remain and inure unto the said James Chalmers, James Hutchinson, William Kirkpatrick and Archibald Biard and their successors the trustees, overseers and elders of the said Presbyterian Church forever for a meeting house, Burying Ground and such other good and pious uses, as to the said James Chalmers, James Hutchinson, William Kirkpatrick and Archibald Biard, and their successors, the trustees, overseers, and elders of the said Presbyterian Church (by the congregation thereof, and their successors, continually forever hereafter to be chosen) or a majority of them, shall at any time hereafter seem most fitting and convenient."

It is further alleged that the congregation on December 23, 1789, was duly incorporated under the general act relating to religious corporations, and that subsequently, in 1906, other proceedings were taken to obtain an incorporation of the congregation; and that by several instruments mentioned in the bill the legal title to the land was conveyed to and is now held by the present corporate body, the name of which is "First Presbyterian Church of Wilmington, Delaware, Incorporated."

There was no statement in the bill whether, or not, the property in question was used for a burying ground, nor does it in fact appear whether the ground covered by the agreement has any buildings erected on it. There is no statement as to the use to which the purchaser is to make of the land. It further appeared that after making the agreement and paying part of the purchase money the purchaser declined to accept the title. The bill prays for a decree for specific performance of the contract of sale.

The answer admits the allegations of the bill; but the defendant denies that the complainant can convey a good fee simple title, and alleges that the land is impressed with and subject to the religious uses and trusts set forth in the indenture of Timothy Stidham, and, therefore, the complainant could not make a good marketable title, though the defendant is ready to fulfill the contract in case a good marketable title can be made to him for the land.

By agreement of the solicitors for the parties the case was heard upon bill, answer and exhibits, the exhibits being copies of the deed from Timothy Stidham and the acts of incorporation and transfers to the corporation by confirmatory deeds relating to the land in question.

*Andrew C. Gray,* for the complainant.
*John P. Nields,* for the defendant.

The Chancellor. No other question was raised in this case, or discussed by counsel, than that relating to the original conveyance from Timothy Stidham, it being assumed that the legal title was vested in the complainant, and the only question for decision being as to the power and authority of the complainant to convey a title clear of limitations and restrictions, or trusts.

The first consideration is whether by the Stidham deed a condition subsequent was created, which would be breached by the sale and conveyance by the church to the proposed purchaser, with the consequence that the heirs at law of Stidham would have the right to enter by reason of the breach. The existence of such a condition would be a sufficient objection to the title and justify the refusal of the purchaser to accept and pay for it. The deed does not contain words directly creating a condition, for none of the technical words appropriate for such purpose are present; and there is in the deed no provision forfeiting the title, or giving to the heirs at law of Stidham a right of re-entry, in case the land be used for any purposes other than those named in the Stidham deed. Though no particular form of words is necessary to constitute a condition, still in order to imply a condition the language used must be such as to show clearly the intention of the grantor to create a condition by implication, for conditions are not favored in law, and are strictly construed, all doubts being resolved against them.

In the deed of Stidham there are two matters which may under certain circumstances be held to imply a condition, viz: First, the statement of the consideration; and the other is the

statement of the use to be made of the property.    The consideration in the deed was a sum of money and as well in consideration that the property should remain to the church forever for a meeting house, burying ground and such other good and pious uses as to the church authorities should at any time hereafter seem most fitting and convenient.    The recital of a two fold consideration consisting in part of the payment of a sum of money, and in part of the use of the property for a designated purpose does not constitute a condition.    *Rawson v. Inhabitants of School District No. 5 in Uxbridge,* 7 *Allen (Mass.)* 125, 83 *Am. Dec.* 670; *Hawley v. Kafitz,* 148 *Cal.* 393, 83 *Pac.* 248, 3 *L. R. A. (N. S.)* 741, 113 *Am. St. Rep.* 282.    It is well settled also that the mere recital of the purpose for which a conveyance was made or the property to be used, does not import a condition.    This has frequently been held in construing deeds to land to be used: (1) For the erection of public buildings, or general municipal purposes.    *Ecroyd v. Coggeshall,* 21 *R. I.* 1, 41 *Atl.* 260, 79 *Am. St. Rep.* 741, and valuable note; (2) for schoolhouses, grounds, or educational purposes.    *Faith v. Bowles,* 86 *Md.* 13, 37 *Atl.* 711, 63 *Am. St. Rep.* 489; (3) for churches.    *Downen v. Rayburn,* 214 *Ill.* 342, 73 *N. E.* 364, 3 *Ann. Cas.* 36; *Farnham v. Thompson,* 34 *Minn.* 330, 26 *N. W.* 9, 57 *Am. St. Rep.* 59, and note; *Adams v. First Baptist Church,* 148 *Mich.* 140, 111 *N. W.* 757, 11 *L. R. A. (N. S.)* 509, 12 *Ann. Cas.* 224, *and note*; (4) for cemeteries.    *Rawson v. Inhabitants of School District No. 5 in Uxbridge,* 7 *Allen (Mass.)* 125, 83 *Am. Dec.* 670.    It is not necessary to cite more of the many other cases to the same effect.

Conditions may be implied where the whole consideration of the grant is the accomplishment of a specific purpose and the enjoyment of the estate is made clearly dependent upon the enforcement of an act beneficial to the grantor or his heirs. Where, however, there is a money consideration, which for aught that appears is more than a nominal one, and may in fact be a valuable or full consideration, the reasonable rule is settled otherwise as above stated, and in this case there is such money consideration.

In the leading case on the subject of *Rawson v. Inhabitants,*

*etc., in Uxbridge*, 7 *Allen* (*Mass.*) 125, 83 *Am. Dec.* 670, where land was conveyed to be used "for a burying place forever," Chief Justice Bigelow thus expressed a view that now prevails:

"We believe there is no authoritative sanction for the doctrine that a deed is to be construed as a grant on a condition subsequent solely for the reason that it contains a clause declaring the purpose for which it is intended the granted premises shall be used, where such purpose will not inure specially to the benefit of the grantor and his assigns, but is in its nature general and public, and where there are no other words indicating an intent that the grant is to be void if the declared purpose is not fulfilled.

So that it may be regarded as settled that when it appears that the declared purpose for which the property conveyed is to be used will not be a special benefit to the grantor, the statement of purpose will not of itself be treated as a condition. *Kilpatrick v. Baltimore*, 81 *Md.* 179, 31 *Atl.* 805, 27 *L. R. A.* 643, 48 *Am. St. Rep.* 509. The statement in the conveyance as to the use to be made of the land conveyed may have been inserted at the request of the grantee to make it appear clearly in the conveyance that the grantee had power to take title to the land. This is principally important when the grantee is a public corporation, such as a municipality, or a *quasi* public corporation such as a religious or charitable corporation, all of which are restricted in their right to acquire land and may take it only for the purposes for which they were created. *Riggs v. City of New Castle*, 229 *Pa. St.* 490, 78 *Atl.* 1037, 140 *Am. St. Rep.* 733.

There may have been in 1737 some legislative restriction upon the power of religious societies to acquire land in Delaware, though the *Act of* 17 *George II*, empowering religious societies to purchase and take land for burying grounds and for erecting churches, schools and almshouses, but not for the maintenance and support of churches or almshouses, was not enacted until 1744. 1 *Del. Laws, p.* 273, §§3, 4, *Hall's Digest of* 1829, *p.* 457. Other sources of information as to legislation in force in 1737, if any there be on the subject, are not now readily accessible. If such legislation existed it would furnish a reason for stating in the deed from Stidham to the officers of the church, the purpose for which the land was acquired by the church.

Inasmuch, then, as there are in the present deed no formal words directly purporting a condition, and the consideration was in part pecuniary and in part relates to the use to which the premises are to be put, and it is not expressed in the deed that the grant should be void, or the grantor or his heirs have a right of entry in case the property be sold and used for any other purpose, it is very clear that no condition subsequent can be implied in this case to defeat the title which would otherwise pass to the grantee in a deed made by the complainant.

It seems quite true, also, that there is in this case no trust created respecting the real estate, such as existed with respect to the land referred to in the case of *Trustees of Baptist Church v. Laird*, a case decided in 1913 in the Court of Chancery of this State, reported in 10 *Del. Ch.* 118, 85 *Atl.* 1082.   The conveyance here was not to certain persons in trust for the religious soicety, but to certain named persons "and their successors, the trustees, overseers and elders and all others the congregation and members of the Presbyterian Church and their successors forever," which clearly indicates a conveyance to the religious society whether it be then incorporated or not.   The legal title to the land afterwards became vested in a properly incorporated religious body by certain acts of the General Assembly, and conveyances made pursuant thereto, which need not be here considered.

There is no occasion, therefore, to invoke the general or statutory powers vested in the Court of Chancery to authorize a conversion of the land in question into money by considering that the legal title is held by the corporation in trust for the purposes designated in the deed of Stidham, or for any other particular purpose.

Inasmuch, therefore, as the complainant has power to convey to the defendant by sufficient deed the legal title in fee simple, clear of any trusts, limitations or conditions as to the uses to be made of the property by the grantee, the complainant is entitled to a decree that the defendant shall specifically perform his contract, and a decree will be entered accordingly.