Strafford
No. 79-057

## DOVER VETERANS COUNCIL, INC.

v.

## CITY OF DOVER

October 12, 1979

*Fisher, Parsons, Moran & Temple,* of Dover (*Robert E. Fisher* orally), for the plaintiff.

*Flynn, McGuirk & Blanchard,* of Portsmouth (*Raymond P. Blanchard* orally), for the defendant.

DOUGLAS, J. The issue before this court is whether the superior court may hold the city of Dover in civil contempt for its failure to comply with a court order based on an ambiguous arbitrator's report.

From 1936 until recently, the Dover Veterans Council and the city of Dover have enjoyed a mutually beneficial relationship; the city has provided the veterans with a meeting place, known as the Central Fire Station, and in return the veterans have cared for grave sites and organized and participated in parades and memorial services. In 1975, because the fire station was within the Dover urban renewal project, the city attempted to transfer title to the Dover Housing Authority. The veterans successfully petitioned the Superior Court (*Loughlin,* J.) to enjoin transfer of title without the veterans' written release, and to require the city to provide the veterans with a comparable replacement facility. The parties were unable to agree upon a new meeting hall and they submitted the issue to arbitration in

accordance with Judge Loughlin's order. A representative of each party met with an arbitrator and the three examined nine alternative facilities before settling on the Back River Community Center. They unanimously recommended that the city acquire the center, make a $30,000 improvement to render the center comparable to the fire station, and lease the facility to the veterans. Judge Loughlin incorporated the report and recommendations in his decree and denied the city's motion for rehearing.

Attorneys for the veterans then prepared a deed in which the center's conveyance to the city of Dover was conditioned on the city's agreement that it would lease the premises to the veterans until the year 2025, and that if the Dover Veterans Council and its member groups ceased to function, the premises reverted to the grantor, Back River Community Center. The center's owners also retained the right to use the premises twice a month without payment and to rent from time to time at a reduced rate. A lease also was prepared that obligated the city to pay for thirty thousand dollars worth of improvements. The city neither accepted the deed nor signed the lease. The veterans then petitioned the court to find the city in civil contempt and to order that it sign the lease and accept the deed. The city filed motions to stay contempt and to set aside the arbitrator's report. The Superior Court (*Cann,* J.) denied these motions and ordered the city to either sign the lease and accept the deed or appeal to this court. The city chose the latter alternative. Because the city withdrew its objection to the lease in its answer to the contempt petition, we assume it will sign the lease if it acquires the center. We therefore address only the question of the deed.

■ The city's first argument is that the deed as worded forces the city to spend public funds for an improper private purpose, and that therefore the city is legally bound to refuse the deed. We reject this position. Provision for a veterans' meeting place as permitted by RSA 31:4 is, under the circumstances of this case, a proper public purpose. The possibility that an incidental private benefit might be derived from a public purpose does not rob the purpose of its public nature. *See Exeter & Hampton Elec. Co. v. Harding,* 105 N.H. 317, 199 A.2d 298 (1964).

The city's second argument is that the arbitrator's report did not require that the city accept a deed containing a reverter clause and a reservation of use and that the city's refusal to do so therefore was not in contempt of an order based on that report. This position has merit.

■ It is a prerequisite to the exercise of the civil contempt power that the underlying order clearly describe what the alleged contemnor must do to avoid the sanction. *Mr. Steak v. Sandquist Steaks,* 309 Minn. 408, 245 N.W.2d 837 (1976); *cf. Kwak v. St. Anthony DePadua Hosp.,* 54 Ill. App. 3d 719 (1977) (court may not enforce a settlement agreement when substantial questions relating to terms are unresolved). In this case the order in question is founded on the arbitrator's report. In our opinion the report is not sufficiently clear to support a contempt citation.

■ In its discussion of the proposed sale the report is succinct; it recommends only that the city take "title" to the center. Authorities differ as to the meaning of the term "title." Most of the cases collected under the term in *Words and Phrases* hold that title to land is an estate in fee simple, full and absolute. 41A *Words & Phrases, Title—To Property* 373, 379–80 (1965). But in other cases "title" has denoted any estate or interest, including a leasehold, *United States v. Hunter,* 21 F. 615 (1884), or merely the right of possession, *Shingleton v. State,* 260 N.C. 451, 133 S.E.2d 183 (1963). The term "title," then, does not clearly describe the estate in the Back River Community Center that the city must acquire. We therefore remand to the superior court for further remand to the neutral arbitrator for a determination of the meaning of "title" as it is used in the report.

*Remanded.*

GRIMES, J., did not sit; the others concurred.