**David W. DEAKYNE, Plaintiff,**

v.

**DEPARTMENT OF ARMY, et al., Defendants.**

Civ. A. No. 78–344.

United States District Court, D. Delaware.

Jan. 29, 1982.

John H. Benge, Jr., Wilmington, Del., and Basil C. Clare, Ridley Park, Pa., Allmond, Eastburn & Benge, Wilmington, Del., for plaintiff.

Joseph J. Farnan, Jr., U. S. Atty. and John X. Denney, Jr., Asst. U. S. Atty., Dept. of Justice, Wilmington, Del., for defendants.

## OPINION

MURRAY M. SCHWARTZ, District Judge.

This action to quiet title was brought by plaintiff, David W. Deakyne, against the United States. Jurisdiction is based on 28 U.S.C. §§ 1346(f), 1402(d) and 2409a. Presently before the Court are the parties' cross motions for summary judgment.

The dispute concerns the ownership of 2.25 acres of marsh land located in the Town of Lewes, Sussex County, Delaware. In 1887 the State of Delaware by statute committed itself to acquiring and transferring title to certain lands in that area to the Federal Government for use in connection with a proposed inland waterway. 18 Del. Laws tit. 8 Chap. 139 at 210–213 (1887) ("18 Del.Laws"). Pursuant to that statute, along with amendments not relevant here, the commissioners of Lewes condemned the land in question in 1892 and awarded damages to the heirs of John Metcalf, which caused "the title to the lands [to] vest in the United States...." 18 Del.Laws at 211.

The original waterway project, which was authorized by the River and Harbor Act of August 5, 1886, 24 Stat. 310 (1886), was subsequently abandoned and the canal was rerouted. As a result part of the land condemned for the original project was returned to the State of Delaware by Act of Congress. Act of May 31, 1924, 43 Stat. 245 (1925). However, the land in question was not included in that reconveyance.

Plaintiff traces his claim through a series of conveyances to the same John Metcalf whose heirs received the condemnation award in 1892. Further, plaintiff alleges that the commissioners of the Town of Lewes recognized his predecessor in interest's claim by quit claim deed dated May 3, 1963. Plaintiff's Amended Complaint to Quiet Title, ¶ 4. Plaintiff does not challenge the validity of the 1892 condemnation but argues that by that proceeding the Government received only an easement which it has since abandoned. The Government contends that it acquired a fee simple absolute which can never be abandoned. In the alternative the Government asserts that if in fact it obtained only an easement, it has never abandoned it. Further, the Government argues that the Court lacks subject matter jurisdiction and that even if it had jurisdiction, plaintiff's cause of action is barred by the twelve year limitation contained in 28 U.S.C. § 2409a(f).

*Jurisdiction*

▉ Plaintiff's first amended complaint requested compensation for the wrongful usurpation of his alleged fee title together with attorney's fees and costs. The Government quite properly argued that such a claim exceeded the $10,000 limit set

by 28 U.S.C. § 1346(a)(2).[1] At oral argument plaintiff requested and was granted leave to file a second amended complaint which expressly limits the damages claimed for the alleged wrongful usurpation to $10,-000.

That amendment does not, however, end the matter. The Government contends that the fact that plaintiff seeks to quiet title to land which could well have a market value in excess of $10,000 [2] deprives this Court of jurisdiction. The Government argues that the monetary value of the property at stake controls for purposes of section 1346(a)(2) and that because plaintiff seeks to deprive the Government of property with a value in excess of $10,000 his claim must be brought in the Court of Claims.

It is possible to read the statutory provisions as the Government suggests, but to do so the Court would have to do violence to the meaning of several of the provisions. Subsection (f) of section 1346 provides that:

The district courts shall have exclusive original jurisdiction of civil actions under section 2409a to quiet title to an estate or interest in real property in which an interest is claimed by the United States.

The Government would read the limitation of subsection (a)(2) back into this independent grant of jurisdiction so that subsection (f) would confer jurisdiction only in cases in which the estate or interest was in land valued at less than $10,000. Although it is possible to read section 1346(a) as requiring that result, to do so would render portions of section 2409a meaningless. Section 2409a(a) provides that:

1. Section 1346(a)(2) provides in part that the district courts shall have original jurisdiction concurrent with the Court of Claims of:
    Any other civil action or claim against the United States, not exceeding $10,000 in amount, founded either upon the Constitution, or any Act of Congress ... or for liquidated or unliquidated damages in cases not sounding in tort.

2. Plaintiff's original and first amended complaints alleged a market value of $80,000.

3. The text of 28 U.S.C. § 2409a(b) provides:
    The United States shall not be disturbed in possession or control of any real property

The United States may be named as a party defendant in a civil action ... to adjudicate a disputed title to real property in which the United States claims an interest. . . .

Nowhere in the statute or the legislative history did Congress evince an intention to limit the Government's amenability to suit to cases involving land valued at less than $10,000. It was originally proposed that jurisdiction be vested in the district courts by adding a new section 1347a to title 28. The legislative history indicates that rather than create a new section, the House Judiciary Committee simply added the language of the proposed section to section 1346 as the new subsection (f). H.R.Rep. No. 1559, 92d Cong., 2d sess. (1972), *reprinted in* [1972] *U.S.Code Cong. & Ad.News* 4547, 4550. There is no indication that by grafting the provision onto section 1346, as opposed to creating a separate section, Congress intended to limit its effect.

An examination of the legislative history of section 2409a(b) provides further support for this view. Section 2409a(b) [3] provides that if it is determined that the United States is wrongfully occupying land the Government may nonetheless retain possession or control of the property by paying damages in an amount to be determined by the district court to the person entitled to compensation. Keeping in mind that the source of jurisdiction for the Court's award of just compensation under section 2409a(b) is the same section 1346(f) at issue here, it is significant that the House Report distinguishes the remedy provided by section 2409a(b) from that provided under the ex-

involved in any action under this section pending a final judgment or decree, the conclusion of any appeal therefrom, and sixty days; and if the final determination shall be adverse to the United States, the United States nevertheless may retain such possession or control of the real property or any part thereof as it may elect, upon payment to the person determined to be entitled thereto of an amount which upon such election the district court in the same action shall determine to be just compensation for such possession or control.

isting provisions of section 1346 by noting "that the district courts would have jurisdiction without regard to any jurisdictional amount such as that contained in section 1346a(2)." H.R.Rep. No. 1559, 92d Cong.,2d Sess. (1972), *reprinted in* [1972] *U.S.Code Cong. & Ad.News,* 4547, 4552. *Accord, United States v. Drinkwater,* 434 F.Supp. 457, 463 (E.D.Va.1977).

Based on the foregoing the Court concludes that section 1346(f) confers jurisdiction on the district courts to hear actions under section 2409a to quiet title to an estate or interest in real property in which the United States claims an interest without regard to the value of the land involved.

*Statute of Limitations*

■ It was not until October 25, 1972, with the enactment of 28 U.S.C. § 2409a that the United States consented to be sued in actions to quiet title. Prior to that date, the Government was, with a few limited exceptions, immune to such suits. *See Buchler v. United States,* 384 F.Supp. 709, 710 (E.D.Cal.1974). As originally proposed, that statute would have been fully retroactive. The statute of limitations, section 2409a(f), would have allowed any action to have been brought within six years after the claim accrued or within two years of the effective date of the Act, whichever was later. The office of the Attorney General opposed the original version on the basis of the administrative burden which it would have placed on the Government. It suggested a different approach which was in fact adopted by Congress in subsection (f). [1972] *U.S.Code Cong. & Ad.News,* 4552–4553.

As enacted section 2409a(f) provides:

Any civil action under this section shall be barred unless it is commenced within twelve years of the date upon which it accrued. Such action shall be deemed to have accrued on the date the plaintiff or his predecessor in interest knew or should have known of the claim of the United States.

Given the clear legislative intent to limit the statute's retroactive effect, those courts which have addressed the issue have unanimously held that a plaintiff's action under section 2409a accrues when he or his predecessor in interest knew or should have known of the Government's claim, even if an action to quiet title could not have been brought at that time. *Knapp v. United States,* 636 F.2d 279 (10th Cir. 1980); *Stubbs v. United States,* 620 F.2d 775 (10th Cir. 1980); *Grosz v. Andrus,* 556 F.2d 972 (9th Cir. 1977); *Hatter v. United States,* 402 F.Supp. 1192 (E.D.Cal.1975); *Buchler v. United States,* 384 F.Supp. 709 (E.D.Cal. 1974).

There is no question that plaintiff's predecessors in interest knew that the Government claimed an interest in the land at issue. The plaintiff's remote predecessors in interest were, after all, the condemnees themselves. The instant dispute concerns the meaning of the phrase "claim of the United States." The government argues that inasmuch as plaintiff's predecessors knew that the government claimed some interest, if only an easement, as far back as 1892, his claim must now be barred. It asserts that the type of interest originally claimed is unimportant; a plaintiff who knows or should know that the Government claims an interest must bring an action to quiet title within twelve years. Thus, according to the Government, if the United States claims any interest in a tract of land, however limited or undisputed, the fee owner must bring an action within twelve years or be forever barred.

In support of this somewhat novel theory the Government cites *Hatter v. United States,* 402 F.Supp. 1192 (E.D.Cal.1975). In *Hatter* the plaintiffs brought an action under section 2409a. In response to the Government's assertion that their claim was time barred, plaintiffs argued that their predecessor in interest knew only that the Government claimed some type of equitable interest in the land. The Court noted that the facts indicated that plaintiffs' predecessor in interest knew of the Government's claim of ownership at least as early as 1950, some twenty-four years before the complaint was filed. Given the existence of that knowledge the Court was not troubled by the distinction between legal and equita-

ble claims and held that section 2409a(f) served to bar both.

A similar situation arose in *Park City, Montana v. United States*, 454 F.Supp. 1 (D.Mont.1978), *aff'd*, 626 F.2d 718 (9th Cir. 1980), *cert. denied*, 449 U.S. 1112, 101 S.Ct. 923, 66 L.Ed.2d 841 (1981). Two counties sued under section 2409a to quiet title to a road right-of-way which they allegedly established in 1893. The land in question had been included in a national park since 1902 and the major portion of the claimed right-of-way traveled a route which followed two Forest Service trails which had been maintained by the Government since the early part of the century. Nevertheless the Court held that the counties' cause of action did not accrue until 1962 when the Government claimed ownership and jurisdiction of the area by posting notice of its interest. In that context, where again the Government had asserted its claim in no uncertain terms, the Court, citing *Hatter*, noted that the exact nature of the interest claimed, legal or equitable, was of no practical significance. 454 F.Supp. at 3.

It is of course true that "[q]uiet title actions are ... not merely actions to settle title, but also actions to remove any clouds of title, whether legal or equitable." *Hatter v. United States*, 402 F.Supp. at 1195. However, it does not follow that knowledge of a claim of ownership can or must be imputed from knowledge of any claim at all. In both *Hatter* and *Park City* the plaintiffs knew that the Government claimed some interest which adversely affected their claims more than twelve years

before they brought suit. In this case the Government first gave notice that it claimed a fee in 1973. Prior to that time the Government referred to its interest as an easement and it was so denominated in the Government's maps, surveys [4] and internal memoranda.[5] Indeed, in response to an earlier inquiry by plaintiff's counsel, the District Engineer of the Corps of Engineers stated that the Government's interest was a perpetual easement and that its records did not disclose any acquisition in fee simple.[6] The Government's own witness testified at deposition that there was no reason that plaintiff should have known at any time between 1963 and 1973 that the Government claimed fee title.[7] Indeed, it was not until plaintiff requested that the land in question be released from the lien of the easement that the Government asserted that its interest was a fee.[8] Based on the foregoing undisputed evidence, the Court finds that neither plaintiff nor his predecessors in interest knew or should have known that the Government claimed anything more than a perpetual easement prior to 1973 and that plaintiff's challenge to that claim, filed in 1978, is timely. *See Knapp v. United States*, 636 F.2d 279, 283 (10th Cir. 1980) (Government must claim some interest adverse to plaintiffs).

That finding does not end our inquiry. Plaintiff's claim, as summarized above, has two distinct elements: that the Government acquired only an easement in 1892, and that that easement has since been abandoned.[9] Plaintiff asserts that the Government's rerouting of the canal coupled with its nonuse of the land for eighty-

---

4. Defendants' Answers to Plaintiff's Interrogatories 1(a), 1(b) ("Defendants' Answers"). Deposition of Gerald R. Boggs, Chief of Real Estate Baltimore District Corps of Engineers at 10 ("Boggs Deposition").

5. Letter from Acting Attorney General, November 3, 1892, Exhibit 43 to Certified Brief of Title filed by the Government.

6. Exhibit C to Plaintiff's First Amended Complaint.

7. Boggs Deposition at 24.

8. Boggs Deposition at 18–19.

9. Neither party separately addressed the issue of section 2409a(f)'s application to plaintiff's abandonment claim as applied to the statutory waiver of sovereign immunity. Because the statute of limitations is jurisdictional, the Court was obliged to raise the issue at oral argument *sua sponte. Park City Montana v. United States*, 454 F.Supp. 1 (D.Mont. 1978), *aff'd*, 626 F.2d 718 (9th Cir. 1980), *cert. denied*, 449 U.S. 1112, 101 S.Ct. 923, 66 L.Ed.2d 841 (1981); *see Munro v. United States*, 303 U.S. 36, 58 S.Ct. 421, 82 L.Ed. 633 (1938). Given its importance, the parties were given leave to file post argument memoranda on this single issue.

five years constitute abandonment of any easement obtained in 1892. The Government argues that even if it did obtain an easement, mere nonuse does not constitute abandonment or, in the alternative, it constitutes a factual issue precluding the granting of summary judgment. The Court need not decide whether the Government's actions could support a finding of abandonment, for whatever the merit of plaintiff's argument, the facts on which it is based have or should have been known to him and his predecessors in interest since 1912 when the project was rerouted. Whatever additional period of nonuse might be required over and above the actual rerouting existed prior to 1966.[10] Plaintiff's abandonment claim is therefore barred by the twelve-year limit of section 2409a(f).[11]

*The Government's Interest*

Having determined that plaintiff's action, at least insofar as it seeks a determination that the Government's interest is limited to a perpetual easement, is not barred by section 2409a(f), the Court's task becomes one of statutory interpretation. The Government's interest was acquired pursuant to the 1887 Delaware statute which provides in part:

That the consent of the Legislature be and the same is hereby given to the acquisition by the Government of the United States of the title to such lands ... as may be necessary for the location and construction of the said canal and its appurtenances:

    \*     \*     \*     \*     \*     \*

[If the United States cannot otherwise obtain the land required the state will condemn it] and when such condemnation shall have been made and the condemnation money paid ... the title to the lands

so condemned shall forthwith vest in the United States.

18 Del.Laws at 210–11.

The difficult issue before the Court is whether the above quoted language resulted in the taking of a fee or of an easement. The Government concedes that when land is condemned for a canal the Government acquires only an easement unless a contrary intention is expressed in the statute which authorizes the condemnation. Defendants' Answering Brief at 5. Such statutes are strictly construed and though no "sacramental words" are required, "unless the Statute provides that a fee simple title shall be acquired, or a fee is necessary for the purposes for which the land is taken, ... only an easement or qualified fee is taken by the Eminent Domain proceedings."[12] *Thomison v. Hillcrest Athletic Ass'n*, 39 Del. 590, 595, 5 A.2d 236, 238 (Del.Super.1939); *accord*, 3 *Nichols on Eminent Domain*, § 9.2[2] (3d ed. 1980).

The Government acknowledges that a fee interest is not required to build a canal, an easement will suffice. Defendants' Answering Brief at 5. Instead it argues that the language of the statute, particularly the phrases "title to such lands" and "title shall forthwith vest," indicates the intent of the Delaware legislature to acquire and convey a fee, and that in any event the determination of that intent is a factual issue.

As this matter is before the Court on a motion for summary judgment, the Government's last contention must be addressed first. A party moving for summary judgment bears a heavy burden. If any material factual issues are in dispute, the motion must be denied. *Pettinaro Construction Co., Inc. v. Delaware Authority*

---

10. Although by no means certain, plaintiff apparently concedes this point when he admits he "may be too late to challenge the United States' position that was taken in 1963." Plaintiff's Reply Memorandum to Defendants' Answering Memorandum on the Single Issue at 3.

11. In holding that plaintiff's abandonment claim is barred by the statute of limitations, the Court expresses no opinion on the merits of that claim.

12. Inasmuch as it is a Delaware statute which must be construed, the Court must look primarily to Delaware decisions. The Delaware courts are, after all, the most qualified interpreters of that State's law. *Commissioner v. Estate of Bosch*, 387 U.S. 456, 87 S.Ct. 1776, 18 L.Ed.2d 886 (1967).

*for Regional Transit*, 500 F.Supp. 559 (D.Del.1980); *Carpenter International, Inc. v. Kaiser Jamaica Corp.*, 369 F.Supp. 1138 (D.Del.1974). In order to determine whether such issues exist, the Court has the power and the obligation "to penetrate the allegations of fact in the pleadings and look at any evidential source to determine whether there is an issue of fact to be tried." *Tomalewski v. State Farm Life Ins. Co.*, 494 F.2d 882, 884 (3d Cir. 1974), *quoting Mintz v. Mathers Fund, Inc.*, 463 F.2d 495, 498 (7th Cir. 1972).

■ It is of course true, in a theoretical sense, that a finding of intention is a factual determination. Often in the context of a contract dispute the need for such a determination, calling for the examination of extrinsic evidence, will preclude the granting of summary judgment. *See, e.g., Anthony P. Miller, Inc. v. Wilmington Housing Authority*, 179 F.Supp. 199 (D.Del.1959). In this case, however, the Court is called upon to determine *legislative* intent. Such a determination is peculiarly within the province of the Court. 2A C. Sands, *Statutes and Statutory Construction*, § 45.03 at 11 (4th ed. 1973).

Plaintiff argues that the terms "vest" and "title" can be used in reference to less than fee interests in land. *See Dover Veterans Council, Inc. v. Dover*, 119 N.H. 738, 407 A.2d 1195 (1979) (term "title" has been used to describe any estate or interest); *Pennsylvania Game Comm'n v. Renick*, 21 Pa.Cmwlth. 30, 342 A.2d 824 (1975). Thus, he argues, the mere fact that these words were used is insufficient to overcome the presumption in favor of the lesser taking. Plaintiff also argues that because the statute specifies the purpose for which the land was acquired, even if the Government obtained a fee it was limited by an implied condition, *i.e.*, that the land be used to build a canal.[13] In addition, plaintiff asserts that

the Government is estopped from asserting a fee simple interest in the land in question because the Corps of Engineers had disclaimed any fee interest in 1963. As to the latter contention, plaintiff conceded at oral argument that he could demonstrate no detrimental reliance. As a consequence there could be no estoppel. The Court therefore does not reach the Government's contention that the doctrine of estoppel is inapplicable in the context of the instant case.

Plaintiff's next contention can also be dealt with quickly. Although conditions may be implied when all or most of the consideration for a conveyance is the accomplishment of a specific purpose, the mere recital of the purpose for which the property is to be used does not create a condition. *First Presbyterian Church v. Bailey*, 11 Del.Ch. 116, 97 A. 583 (1916). Plaintiff argues that the consideration involved here, twenty dollars for approximately twenty acres of land, is so deficient that it must have been intended that the canal itself would serve as a supplemental consideration. Although it is true that the commissioners appointed by the 1887 statute were specifically instructed to consider the advantages as well as the disadvantages accruing to the condemnees by reason of the subsequent construction of the canal, 18 Del.Laws at 210–12, plaintiff's argument must fail. Whatever its value today, in 1892 the land in question was unimproved marsh land. Neither party has been able to supply or represent to the Court that they could at trial supply any evidence as to the fair market value of such land in 1892.[14] The dispute must therefore be resolved without reference to such evidence.

Some slight support for the Government's interpretation of the 1887 statute can be found in the course of subsequent events. As noted, in 1924 Congress returned part of the land originally condemned for the project to the State of Delaware. The fol-

---

**13.** It is conceded that the Government does not now intend to construct a canal on the land in question and has in fact solicited bids for commercial leases. Defendants' Answers 1(n), 1(o).

**14.** A determination that fair market value had been paid would not determine the issue as that value is often the basis of condemnation awards even when less than a fee is taken. *Thomison v. Hillcrest*, 39 Del. 590, 596, 5 A.2d 236, 239 (Del.Super.1939).

lowing year the State granted, quit claimed and reconveyed that land to the "Commissioners of Lewes." 34 Del.Laws tit. 1 Chap. 145 at 365–66 (1925). If as plaintiff suggests the Government's interest is only an easement, it might be argued those lands, which had been condemned pursuant to the same 1887 statute, should have reverted to the original condemnees, their heirs or assigns.

Judging the intent of a legislature which met almost a century ago is difficult. The acts of the 1925 legislature are of some help in that regard but are at best secondary sources as to the intent of its predecessor. Similarly, only ambiguous insight can be gained from the Government's eighty-one year treatment of the interest in question as an easement. The primary task remains the ascertainment of the 1887 legislature's intent in using the words "title" and "vest." As defendant notes the words can connote a taking in fee. Both parties rely heavily on *Thomison v. Hillcrest Athletic Ass'n*, 39 Del. 590, 5 A.2d 236 (Del.Super.1939), the only Delaware case Court or counsel have found which discusses the issue. In *Thomison* the Court held that in condemnation proceedings held pursuant to a statute which provided that the land would become the property of a school district for school purposes only, a limited estate was taken. Although differences in the wording of the statute involved in *Thomison* preclude reliance on the court's holding, defendant urges reliance on its rationale for distinguishing three cases from other jurisdictions. The Court noted that in each case the statute had provided for the vesting of title in the condemnor. It was those words, in the Court's opinion, that convinced the courts in the cited cases that the statutes relied on "imported the transfer of the fee simple title." 39 Del. 596–98, 5 A.2d at 239; *accord, Valentine v. Lamont*, 25 N.J.Super. 342, 96 A.2d 417, *aff'd*, 13 N.J. 569, 100 A.2d 668 (1953), *cert. denied*, 347 U.S. 966, 74 S.Ct. 776, 98 L.Ed. 1108 (1954).

The Court recognizes that its task in this case is to predict what the Delaware Supreme Court would decide if it were presented with this issue. *McKenna v. Or-*

*tho Pharmaceutical Corp.*, 622 F.2d 657 (3d Cir.), *cert. denied*, 449 U.S. 976, 101 S.Ct. 387, 66 L.Ed.2d 237 (1980). Although helpful in that regard, *Thomison*, a trial court opinion, is not dispositive. Moreover, the portion of the opinion upon which defendant relies is dicta of the weakest kind. The court did not hold that the presence of the words "title" and "vest" in an eminent domain statute resulted in the condemnation of a fee, it merely distinguished the holdings of three cases from other jurisdictions on that basis.

As noted, the words "title" and "vest" have no fixed meaning in the law. Given the absence of authoritative Delaware precedent, I conclude that if presented with the issue the Delaware Supreme Court would hold that the 1887 statute is not sufficiently unambiguous to overcome the strong presumption in favor of the taking of an easement. The Government's interest in the land in question is therefore limited to a perpetual easement.

*Conclusion*

Based on the foregoing the Court concludes that 28 U.S.C. §§ 1346(f), 1402(d) and 2409a confer subject matter jurisdiction on this Court to hear plaintiff's claim to quiet title to land in which the Government claims an interest without regard to the value of the land involved. However, that jurisdictional grant is limited by the provisions of 28 U.S.C. § 2409a(f) which bar any such actions not brought within twelve years of when they accrued. On the facts of this case, section 2409a(f) does not bar plaintiff's claim that the Government's interest is limited to an easement; it does, however, bar his claim that the easement has been abandoned. Reaching the merits of plaintiff's claim, the Court concludes, based on its examination of the 1887 statute and the relevant case law, that the Government's interest is limited to a perpetual easement.

Submit order on notice within ten days.