**David W. DEAKYNE, Appellant in 82–1162**

v.

**DEPARTMENT OF The ARMY CORPS OF ENGINEERS, United States of America, Department of the Army, Appellant in 82–1248.**

Nos. 82–1162, 82–1248.

United States Court of Appeals, Third Circuit.

Argued Sept. 14, 1982.

Decided March 4, 1983.

As Amended March 29, 1983.

Rehearing Denied March 29, 1983.

---

Basil C. Clare (argued), Ridley Park, Pa., John H. Benge, Jr., Allmond, Eastburn & Benge, Wilmington, Del., for appellant in No. 82–1162.

Carol E. Dinkins, Asst. Atty. Gen., Washington, D.C., James W. Garvin, Jr., U.S. Atty., John X. Denney, Jr., Asst. U.S. Atty., Wilmington, Del., Robert L. Klarquist, Martin Green (argued), U.S. Dept. of Justice, Washington, D.C., for appellant in No. 82–1248.

Before ADAMS, HUNTER and BECKER, Circuit Judges.

## OPINION OF THE COURT

BECKER, *Circuit Judge*.

This appeal and cross-appeal arise from an action brought by David W. Deakyne against the United States to quiet title to 2.25 acres of marshland located on the northeasterly side of the Lewes and Rehoboth Canal in the City of Lewes, Delaware.[1] The case has a venerable history, extending back to 1887, when the Delaware legislature authorized condemnation of the land for use by the United States for construction of a canal. The original plans for the canal would have left the land submerged; however, the canal, as ultimately built in 1927, bypassed the land.

Deakyne traces his interest in the land through a chain of conveyances back to the original condemnees. In 1963, his immediate predecessor in interest, his mother, initiated negotiations with the United States

Army Corps of Engineers seeking to obtain a release of claims by the United States. Deakyne took up these negotiations when his mother conveyed her interest to him in 1973. Prior to 1975, the Corps represented that the United States held a perpetual easement in the land. In 1975, however, Deakyne received a letter from the legal department of the Corps stating that the Corps' attorneys understood the Delaware statute to have authorized condemnation of a fee rather than an easement, and that the United States therefore held a fee simple interest in the land. Deakyne also claimed a fee interest, and when negotiations finally broke down in early 1978, he instituted this action.[2]

The background facts are extremely detailed. They are amply set forth in the thoughtful opinion of the district court, *see* Deakyne, *supra* note 1, and we will not repeat them here. For present purposes we need only explain the procedural history of the case and the contested issues, as well as the reasons for our disposition.

After development of a record in the district court, both Deakyne and the Government moved for summary judgment. The Government asserted that 28 U.S.C. § 2409a(f),[3] which bars claims brought under section 2409a more than twelve years after the plaintiff or any predecessor in interest knew or should have known of the Government's claim to an interest in the land, divested the district court of jurisdic-

---

1. Jurisdiction is based on 28 U.S.C. § 2409a (1976), also known as the "Quiet Title Act," and *id.* §§ 1346(f) (exclusive jurisdiction of district courts over suits brought under § 2409a) and 1402(d) (§ 2409a suits to be brought in district in which land located). We agree with the district court's holding that § 1346(f) confers jurisdiction on the district courts to hear § 2409a actions to quiet title in real property in which the United States claims an interest, without regard to the value of the land involved. *See Deakyne v. Dep't of Army*, 530 F.Supp. 1322, 1324–25 (D.Del.1982).

2. Under 28 U.S.C. § 2409a(a), "[t]he United States may be named as a party defendant in a civil action under this section to adjudicate a disputed title to real property in which the

United States claims an interest, other than a security interest or water rights."

3. Section 2409a(f) reads:

Any civil action under this section shall be barred unless it is commenced within twelve years of the date upon which it accrued. Such action shall be deemed to have accrued on the date the plaintiff or his predecessor in interest knew or should have known of the claim of the United States.

This section also limits the retroactive effect of the Quiet Title Act, since the limitations period runs even though the action "accrued" prior to the passage of the Act. *See Deakyne, supra* note 1, 530 F.Supp. at 1325.

tion to decide Deakyne's claims.[4] The court rejected this argument, noting that because the Government had first laid claim to a fee interest, as opposed to an easement, in 1975, Deakyne's suit was brought well within the statutory period. The court then construed the 1887 Delaware statute authorizing condemnation of lands for the canal as permitting only the taking of easements, concluding that the United States' interest was limited to an easement and that its claim to a fee simple failed. However, the court also held that section 2409a(f) barred Deakyne's claim that the United States had abandoned the easement obtained from Delaware in 1892.[5] The court reasoned that "the facts on which [his abandonment argument] is based have or should have been known to him and his predecessors in interest since 1912 when the project was rerouted." 530 F.Supp. at 1327.

■ The Government has appealed, first contending that, because Deakyne's predecessor in interest knew at the time of condemnation that the United States claimed *some* interest in the land, the district court was without jurisdiction to adjudicate the United States' interest—be it a claim to the fee or merely to an easement. In the alternative, the Government argues that the circumstances surrounding the United States' reconveyance in 1924 of some of the lands acquired from the State of Delaware pursuant to the 1887 statute clearly put Deakyne's predecessor in interest on notice that the United States claimed to possess a fee to all such lands.[6] Thus, says the Government, Deakyne's cause of action "accrued" in 1924 and was extinguished 12 years later, in 1936, and the district court therefore was without jurisdiction in 1978 to adjudicate the United States' claim to a fee. The Government did not advance this contention in the district court, and we ordinarily are unwilling to consider arguments not made below. In this case, however, the issues raised by the Government concerning the 1924 events are jurisdictional, *see supra* note 5, and can be raised at any time.[7] Deakyne has cross-appealed, asserting that the court should have taken jurisdiction over the claim that the Government abandoned its easement.

We agree with the district court's analysis of the first contention raised in the Government's appeal, and we will not discuss it further. However, we will remand for the limited purpose of allowing the dis-

---

4. A waiver of sovereign immunity by the United States may be made subject to any (constitutional) conditions Congress wishes to impose, and those conditions are to be strictly construed. *See, e.g., Lehman v. Nakshian,* 453 U.S. 156, 101 S.Ct. 2698, 69 L.Ed.2d 548 (1981) (no right to jury trial in suit against United States); *United States v. Kubrick,* 444 U.S. 111, 100 S.Ct. 352, 62 L.Ed.2d 259 (1979) (courts not to extend statute of limitations, which is condition on waiver of sovereign immunity, beyond what Congress intended). The running of a statute of limitations on an action against the United States does not provide the Government with a waivable defense; it deprives the court of jurisdiction. *United States v. Sams,* 521 F.2d 421, 428 n. 39 (3d Cir.1975).

5. Pursuant to the 1887 statute, the land was condemned by the State and conveyed to the United States in 1892.

6. The Government does not challenge, even on the basis of an assumption *arguendo* that jurisdiction obtains, the district court's determination on the merits that the 1887 Delaware statute limited the Government's interest to an easement. This possible *sub silentio* conces-

sion on the merits, however, does not subvert the Government's argument that the 1924 Act put Deakyne's predecessor on notice of the United States' claim to a fee, thus commencing the running of the statute of limitations and depriving the district court of jurisdiction to make a determination on the merits.

7. "On every writ of error or appeal, the first and fundamental question is that of jurisdiction, first, of this court, and then of the court from which the record comes. This question the court is bound to ask and answer for itself, even when not otherwise suggested, and without respect to the relation of the parties to it." *Mansfield, Coldwater & Lake Michigan Railway Co. v. Swan,* 111 U.S. 379, 382, 4 S.Ct. 510, 511, 28 L.Ed. 462 (1884); *accord Duke Power Co. v. Carolina Envtl. Study Group, Inc.,* 438 U.S. 59, 68, 98 S.Ct. 2620, 2627–28, 57 L.Ed.2d 595 (1978); *Andrus v. Charlestone Stone Prods. Co.,* 436 U.S. 604, 607 n. 6, 98 S.Ct. 2002, 2005 n. 6, 56 L.Ed.2d 570 (1978); *see* Fed.R.Civ.P. 12(h)(3). Thus, we must consider the Government's argument even though it is raised here for the first time.

trict court to determine whether the 1924 events, not previously considered, warrant a finding that Deakyne's predecessor in interest should have known that the Government, in 1924, was claiming a fee interest in Deakyne's land. As to Deakyne's cross-appeal, we will affirm.

## I.

In 1924, Congress enacted a bill reconveying to the State of Delaware a portion of the land originally donated by the State to the United States pursuant to the 1887 Delaware statute. The reconveyed land did not include the Deakyne land. The Act by its terms appears to have conveyed a fee: "Be it enacted ... That the United States hereby grants, quitclaims, and reconveys to the State of Delaware all that certain piece or parcel of land situate in Lewes and Broadkill Hundred ...." Pub.L.No. 160, 43 Stat. 245 (1924), Government's Brief at 12. The Government argues that if the United States claimed only an easement for the construction of a canal, Congress would not have purported in 1924 to convey unrestricted title to the land to the State of Delaware which was not the owner of the underlying fee. In the Government's submission this Act therefore shows that Congress understood the United States to have held a fee interest in all the land reconveyed and by implication in all lands that had been condemned pursuant to the 1887 Delaware statute for use in the canal project. The Government also submits that the Act provided notice of the United States' claim to everyone claiming any interest in any such lands. The Government concludes that this purported statutory conveyance of an unrestricted fee interest in adjacent lands should have put Deakyne's predecessor in interest on notice of the claim by the United States to a fee in the property now in dispute, thus barring Deakyne's suit in its entirety under § 2409a(f).

■ While we intimate no view as to whether the Government should prevail on this argument, it is at least a colorable one. There is, however, a predicate question of fact to be resolved. Deakyne claims that the property reconveyed by the 1924 Act was part of the so-called "Warner Grant," fee title to which resided with the State of Delaware in 1887, so that the State retained fee title to that property when it was donated to the United States for canal purposes pursuant to the 1887 Delaware statute, see United States v. 1,010.8 Acres, More or Less, Situate in Sussex County, Delaware, 56 F.Supp. 120, 129–30, 144 (D.Del.1944).[8] He also claims that all parties—the United States, the State of Delaware, and the successors in interest of the 1887 condemnees—understood in 1924 that the United States held only an easement in the land it proposed to reconvey to the State. Because the 1924 statute reconveyed the land to the State of Delaware, Deakyne asserts, it did no more than officially extinguish the easement. Thus, Deakyne concludes, the 1924 Act did not notify claimants to neighboring lands that the United States understood its interest to be a fee.

The Government controverts Deakyne's factual assertion, claiming that "the exact boundaries of the Warner Grant are unknown," Government's Reply Brief at 5. The Government argues further that the legislative history supports its interpretation of the 1924 Act as conveying a fee to a party other than the pre-1887 fee owner. An earlier draft of the bill, which would have authorized conveyance of the land directly to the City of Lewes, was modified pursuant to the advice of the Secretary of War. The Secretary's letter, which was incorporated into the legislative history, asserts that "[t]he State of Delaware, in pur-

---

**8.** The "Warner Grant" was made by William Penn, as proprietor of Delaware, to Edward Warner and the inhabitants of Lewes and of Sussex County, on January 10 and 11, 1682/3 (1682 by the Julian Calendar, which was in effect in the British Colonies at the time). United States v. 1,010.8 Acres, supra, 56 F.Supp. at 127. Warner's interest has been lost to the ages, but the citizens of Lewes and Sussex County, at least until 1944 when United States v. 1,010.8 Acres was decided, held a right of common to the land, administered by the state through the Commissioners of Lewes as trustees.

suance of [the 1887 Delaware Statute], *acquired by condemnation* the lands required as a right of way for this waterway.... *The parcel described in the bill is a part of the lands thus condemned and conveyed by the State.*' " H.R.Rept. No. 672, 68th Cong. 1st Sess. 2 (1924), Government's Brief at 11 (quoting Secretary of War's letter) (emphasis added). The letter also appears to assume that the United States was free to dispose of the land to anyone and did not have to limit the grantee to using the land for canal purposes, for it concludes that "as the State of Delaware condemned and paid for the land and donated it to the Government for a special purpose for which it is no longer needed, it is thought that good faith requires that it be returned to the State *rather than to anyone else.*' " *Id.* (Emphasis added.)

As we have noted above, the language of the Act bespeaks conveyance of a fee interest rather than relinquishment of easement rights to the owner of an underlying fee. Further, this legislative history makes it clear that Congress did not understand that, in conveying the land to the State, it was returning the land to the pre-1887 fee owner. Thus Congress could not, as Deakyne argues, have meant merely to extinguish an easement, for this intention could only be fulfilled by conveying the United States' interest to the pre-1887 owner. In the face of the legislative history, it cannot be maintained that Congress understood the State to have been the pre-1887 owner of the land conveyed. We therefore think that the Government's construction of the

Act as purportedly conveying a fee interest must prevail.

■ Even if the Act purports to convey a fee interest in lands adjacent to Deakyne's, there remains a question whether the Act provided notice to Deakyne's predecessor in title that the United States claimed a fee interest in his property. Section 2409a(f) states that a cause of action accrues under section 2409a when plaintiff's predecessor in interest knew or *should have known* of the United States' claim. *See supra* note 3. There are thus two issues to be resolved. The first is whether Deakyne's predecessor in interest reasonably could have understood the reconveyed land to have belonged in 1887 to the State of Delaware and read the 1924 Act to be a relinquishment of an easement rather than a conveyance of a fee.[9] If so, a cause of action did not "accrue" in 1924 and the statute of limitations in section 2409a(f) did not then begin to run. Whether such a belief was reasonable depends in part on whether the land was in fact part of the Warner Grant. The second issue is whether Deakyne's predecessors in interest should have understood, on the basis of the 1924 Act, that Congress' claim to a fee extended to *all* the lands condemned pursuant to the 1887 Delaware statute, and not just to those lands actually re-conveyed. In this regard the apparent fact that Government maps, surveys, and internal memoranda prior to 1975 all referred to the United States' interest in the Deakyne land as an easement, *see Deakyne, supra,* 530 F.Supp. at 1326, is relevant evidence. We

9. Although we are dealing with an Act of Congress, of which all persons generally are charged with notice, *North Laramie Land Co. v. Hoffman,* 268 U.S. 276, 283, 45 S.Ct. 491, 494, 69 L.Ed. 953 (1925), we cannot say on the record before us that the Act in question "relate[s] to matters in which the general public were concerned, [so that] all were bound to take notice of its provisions," *Ketchum v. St. Louis,* 101 U.S. 306, 316, 25 L.Ed. 999 (1879). We would not hesitate to charge with such notice a claimant to land actually conveyed by such an Act. The Deakyne land, however, although adjacent to land that was the subject of the Act, was not actually mentioned therein, and it therefore is less clear that Deakyne's predecessor in interest should be charged with

notice that the United States had intended to convey a fee. It is true that we now have so interpreted the Act, but we have reached that conclusion only after some fairly involved reasoning and with the help of the Act's legislative history. We therefore hold that Deakyne's predecessor may fairly be charged with notice that the United States intended to reconvey a fee in adjacent lands unless, on remand, Deakyne can show that facts external to the 1924 Act establish that the land reconveyed was in fact owned by the State prior to 1887 and thus was never condemned. Such a showing would permit the district court to find that Deakyne's predecessor in interest could reasonably have understood the reconveyance to have been of no more than an easement.

remand to give Deakyne the opportunity to show that it was reasonable for his predecessor not to have known, on either of these grounds, that Congress claimed a fee interest.

## II.

■ We turn to Deakyne's cross-appeal. Deakyne alleged in the district court that the Government abandoned its easement in 1912, when it changed its original plans and chose not to build the canal on the land Deakyne now claims. The district court held the abandonment claim barred because more than twelve years had passed since the event that allegedly effected the abandonment: the re-routing of the canal in 1912. 530 F.Supp. at 1327. We agree with the court's reasoning. Invoking the rationale of *United States v. Western Pacific Railroad Co.,* 352 U.S. 59, 77 S.Ct. 161, 1 L.Ed.2d 126 (1956), however, Deakyne asserts that because the district court had jurisdiction to determine whether the Government has a fee, and because Deakyne's claim that the Government has abandoned its easement is in the nature of a defense, the court also had jurisdiction to hear that defense.[10] But Deakyne reads *Western Pacific* too broadly, and his argument therefore must fail.

*Western Pacific* involved a railroad's attempt to recover money allegedly due from the United States for carrying a shipment of napalm. The railroad had billed the United States at the rate provided for "incendiary bombs," but the United States, claiming that napalm did not fit the higher classification, paid at a lower rate. The railroad filed suit in the Court of Claims to recover the difference. The United States raised, *inter alia,* the defense that the rate claimed by the railroad was unreasonable

and that, under the doctrine of primary jurisdiction, the court should suspend the proceedings and refer the reasonableness issue to the ICC. The Court of Claims, noting that the suit was filed within the six-year statute of limitations provided for in the Tucker Act for claims over which the Court of Claims has jurisdiction,[11] but beyond the two-year period provided for in the Interstate Commerce Act for rate determinations by the ICC,[12] ruled on the merits in favor of the railroad but refused to refer the unreasonableness defense to the ICC. The Supreme Court reversed, holding that issues raised by way of defense in a suit that is itself timely brought are not time-barred even though an affirmative action before the ICC by the party raising the defense might have been so precluded.[13]

Deakyne attempts to fit the present suit into this mold by characterizing his claim that the United States abandoned its easement as a "defense" to a putative attempt by the Government to have its easement claim adjudicated. *Western Pacific* is, however, inapposite. In the first place, *Western Pacific* addressed a rather unusual set of concerns: the plaintiff carrier there was able to institute suit beyond the two-year limitations period found in the Interstate Commerce Act only because the shipper was the United States, suits against which are governed by the Tucker Act with its six-year limitations period. It is only the disparity between the two limitations periods, a disparity tied to the identity of the defendant, that enabled the plaintiff to argue that defendant's issue could be barred while its own lawsuit was not.[14] Indeed, the Supreme Court made it clear that its primary concern was to avoid bestowing upon the carrier the tactical advantage against the United States that a contrary ruling would

---

**10.** Although Deakyne raises this argument for the first time on appeal, we will discuss it because it involves our jurisdiction.

**11.** 28 U.S.C. § 2501 (1976).

**12.** 49 U.S.C. § 16(3)(a) (1976) (recodified at 49 U.S.C. § 11706(a) (Supp. IV 1980)) (limit changed to 3 years).

**13.** The Court assumed, without deciding, that a proceeding brought by the United States before the ICC would be time-barred after two years.

**14.** This disparity no longer exists. *See* 49 U.S.C. § 11706(f) (Supp. IV 1980) (3 year time limitation on actions by or against a common carrier "applies to transportation for the United States Government.")

afford: "[o]nly the clearest congressional language could force us to a result which would allow a carrier to recover unreasonable charges with impunity merely by waiting two years before filing suit." 352 U.S. at 71, 77 S.Ct. at 169. The United States is clearly in no such position here. The Government did not control the timing of litigation, and, in fact, the limitations period on the United States' easement claim had elapsed before Deakyne ever had the right to bring his suit against the United States.[15]

Second, the Government does not "affirmatively seek[] ... a declaration of its interest"[16] from the court, unlike the carrier in *Western Pacific*. Its contention is simply that the district court did not have jurisdiction to adjudicate the claim because the United States has not consented to be sued where plaintiff or his predecessor in interest has had more than twelve years' notice of the United States' assertion of an interest in land. Deakyne's abandonment claim is thus not a "defense" in the *Western Pacific* sense, for it is not a response to a substantive claim. Because the Quiet Title Act was not passed until 1972, Deakyne has never had a right to an adjudication of the United States' claim to an easement, and the Corps of Engineers' change of position in 1975, claiming a fee simple, did not confer on Deakyne any such right.

### III.

The judgment in No. 82–1162 will be affirmed. The judgment in No. 82–1248 will be vacated and the case remanded for further proceedings consistent with this opinion.

---

**15.** Section 2409a was enacted in 1972, sixty years after the events alleged to have constituted abandonment.

**16.** Appellant's Brief at 12.